**DUNDAS SHIPPING & TRADING CO., LTD. and Leonard J. Buck, Inc., Petitioners,**

v.

**STRAVELAKIS BROTHERS, LTD., Respondent.**

No. 80 Civ. 6783.

United States District Court, S. D. New York.

March 2, 1981.

Cichanowicz & Callan, New York City, for petitioners; Alfred F. Koller, New York City, of counsel.

Haight, Gardner, Poor & Havens, New York City, for respondent cross-petitioner; Christopher N. Fermanis, Gary D. Sesser, New York City, of counsel.

## OPINION

EDWARD WEINFELD, District Judge.

Before the Court are motions by parties to an agreement pursuant to which an arbitration was conducted—one party petitions to vacate or modify the award for failure to allow it damages and the other cross-petitions to vacate the award insofar as it found against it on the issue of liability.

Dundas Shipping & Trading Co., Ltd. ("Dundas"), a Canadian corporation and the petitioner, and Stravelakis Brothers, Ltd. ("Stravelakis"), the cross-petitioner and a Greek corporation, in August 1972 entered into a two-year contract of affreightment, with an option for a third year, under which Stravelakis as agent for vessel owners agreed to provide Dundas with the vessels for the carriage of "lawful merchandise" from southern African ports to the United States. At the same time, Dundas entered into a virtually identical "back-to-back" contract with Leonard J. Buck, Inc. ("Buck"), a New Jersey corporation. Although Buck was not a party to the contract between Dundas and Stravelakis or to the arbitration proceeding that is the sub-ject of their current motions, Buck is included in the caption of this proceeding as a co-petitioner with Dundas.

Under the contract of affreightment between Dundas and Stravelakis, the date for the first lifting of cargo was October/November 1972. However, during their negotiations, the parties learned that another vessel, the Venthisikimi, a Greek flag vessel, was available before October 1, 1972 and so they entered into a single voyage charter party for that vessel. Greece was one of the countries that had subscribed to the United Nations sanctions against carrying products originating from or destined to Rhodesia. It appeared that because some of the cargo carried by the Venthisikimi was of Rhodesian origin, the Greek authorities commenced an investigation into possible violations of Greek law implementing these sanctions. In late October 1972, Dundas sought to have Stravelakis nominate the first vessel under the contract of affreightment. Stravelakis, based on the Venthisikimi incident, was concerned that cargo to be tendered it by Dundas would be of Rhodesian origin and thus would violate the legal proscriptions against importing Rhodesian goods and declined to nominate any vessel. Thereupon, Dundas, pursuant to the arbitration provision in the contract, designated its arbitrator; Stravelakis did likewise and the two arbitrators agreed upon a third. That arbitration proceeded in two stages—liability and damages. As stated by the arbitrators in the interim award at the end of the first stage:

> The issue considered by the Panel is whether an Owner may refuse to perform under a Contract of Affreightment solely because a reason exists to expect that certain cargoes would be tendered which would be "non-lawful" under the contract and the nations of charterer and vessel registry.

> This decision considers only the issue of liability, if any, for the alleged breach of the Contract. The measure of damages suffered, if any, are reserved for subsequent consideration as warranted.

On the issue of liability, both sides offered evidence before the arbitrators, Stravelakis stressing the Venthisikimi incident and Dundas contending that not only was this a separate single voyage charter but also that Stravelakis was using it as a strategem to profit from a substantial rise in the freight market that had occurred since the agreement had been entered into between them. The panel found that the charterer Dundas could have tendered acceptable cargoes if given the opportunity to do so. After giving due consideration to the Venthisikimi incident, which the panel found "unique and distinguishable," it concluded that Stravelakis had failed to show probable cause that there "would be illegality," and thus that it could not "find in either equity or the facts ground sufficiently convincing to justify the anticipatory breach of [Stravelakis] nor to excuse [it] from fulfilling the most basic of [a ship owner's] duty, that of presenting a vessel." Accordingly, Stravelakis was cast in liability to Dundas and the arbitration moved on to the issue of damages.

Four hearings were conducted on the damage claim, and as on the issue of liability, the parties were represented by their attorneys, briefs were submitted and reply briefs were exchanged. The evidence developed that Buck was a trading firm engaged in the importation of chrome and magnesium ores into the United States and that the back-to-back contract between Buck and Dundas, which as already noted was essentially similar to the Dundas/Stravelakis contract, was allegedly entered into for tax reasons. Dundas sought $6,500,000 damages for increased cost of shipment based on an arbitrarily selected portion of Buck's total ore import trade, referred to as "replacement" voyages.

Stravelakis urged that the documents purporting to support the damage claim revealed that Buck, not Dundas, had paid for transporting the "replacement" cargoes and had assumed any increased cost. The claim that Dundas suffered no damage was raised at the first hearing after the production of the documents. Stravelakis' counsel specifically directed the Panel's attention to the fact that it "had been convened to decide the dispute between Stravelakis and Dundas, not between Stravelakis and Buck and not between Buck and Dundas," and that there was no basis for a damage award either to Dundas, because it had not sustained any damages, or to Buck, because it was not a party to the agreement or arbitration.[1]

It was not until the final hearing before the Panel that response was made to Stravelakis' contention. Dundas' counsel, having previously stipulated that Dundas and Buck were separate legal entities, argued that "everyone knew" Dundas acted in a representative capacity and that Buck was the real party in interest, that no objections had been made during the arbitration proceedings that Buck had not been made a party thereto, and that if Stravelakis thought Buck was a necessary party, its counsel should have taken action to that end. Stravelakis persisted in its previously asserted position and pressed that since the contract and the arbitration submission were between it and Dundas only, a holding that Buck was a party to the arbitration would, in his words, "be tantamount to a change of the contract terms by the Panel." Buck, alerted to the Stravelakis position prior to the close of the hearings when there was still an opportunity for action, failed to heed the suggestion that it institute an arbitration proceeding against Dundas pursuant to the agreement between them and then move to consolidate it with the pending one; nor did it present any evidence that it was acting on behalf of Buck.

After hearing extended argument and receiving briefs from the parties, the Panel rendered its award. At the very outset, the Panel noted that "[i]t was conceded—for reasons that were never fully explained—that Buck never sought arbitration with Dundas under the arbitration clause of their Contract of Affreightment, that

---

1. Arbitration Hearing, p. 780; *see also* p. 933.

Buck/Dundas damages were not liquidated in any known way. Buck never joined as a formal party in this Dundas/Stravelakis proceeding before the Panel."

After addressing the various arguments and counter-arguments of the parties, a majority of the Panel concluded "that no damages are due Dundas because .it has not been proved that any were suffered, have been paid, or would be paid." The majority recognized that its decision was on "narrow grounds." However, it declined "to measure damages by amounts that may have been incurred—on some theory of loss—by Buck, who is not a party to the contract."[2] The majority of the Panel concluded that

> having selected a stylized form of transaction to conduct its business—with all of its ramifications—the parties should be held to the natural consequences of observing the form they have chosen. The lack of a consolidated arbitration to pursue a remedy in breach abandons the chosen form of transaction, to the peril of its author. In short, the decision of Buck to not formally participate in this Arbitration as a Party makes it impossible for the majority of the Panel to consider Buck's losses in the assessment of damages due Dundas."[3]

The dissenting panel member noted that Stravelakis had acknowledged that some loss had been sustained since the shipping rates had rapidly gone up from the time the parties had entered into their agreement, and the dissenter thought it was proper to accept the concept of the "real party in interest."[4] He was of the view that the relationship between Dundas and Buck was known and accepted by all· the parties but he was outvoted on this issue by a majority . of the Panel.

■ Against the foregoing background, we consider the contention of. the parties. It has previously been noted that Buck is described in the. caption of this proceeding, and referred to by his attorney, as a petitioner. But the simple fact is that Buck was not a signatory to the submission of the dispute to the arbitrators, which was pursuant to a provision contained in the contract between Dundas and Stravelakis to which it also was not a party. The Arbitration Act provides that the Court may vacate an . award "upon the application of *any party* to the Arbitration."[5] Since Buck was not a party to the arbitration, it has no standing to move to vacate the award.[6]

■ As to the remaining claims of Dundas as petitioner and Stravelakis as cross-petitioner, the Court's power to review the arbitrators' award is "severely limited"; it is confined to the grounds specified in 9 U.S.C. § 10[7] or when the award is the product of a "manifest disregard" of applicable law,[8] a judicially-created addition to the proscriptions of 9 U.S.C. § 10 which is also "severely limited."[9] It is not the func-

2. Final Award, pp. 6 & 7.

3. Final Award, pp. 8 & 9.

4. Dissenting Opinion, p. 2.

5. 9 U.S.C. § 10 (emphasis supplied).

6. *See Local 13, Int'l Longshoremen's & Warehousemen's Union v. Pacific Maritime Ass'n*, 441 F.2d 1061, 1064 (9th Cir. 1971), *cert. denied*, 404 U.S. 1016, 92 S.Ct. 677, 30 L.Ed.2d 664 (1972).

7. 9 U.S.C. § 10 provides that a court may vacate an arbitration award
    (a) Where the award was procured by corruption, fraud, or undue means.
    (b) Where there was evident partiality or corruption in the arbitrators, or either of them.
    (c) Where the arbitrators were guilty of misconduct in refusing to postpone the hearing, upon sufficient cause shown, or in refusing to hear evidence pertinent and material to the controversy; or of any other misbehavior by which the rights of any party have been prejudiced.
    (d) Where the arbitrators exceeded their powers, or so imperfectly executed them that a mutual, final, and definite award upon the subject matter submitted was not made.
    (e) Where an award is vacated and the time within which the agreement required the award to be made has not expired the court may, in its discretion, direct a rehearing by the arbitrators.

8. *Wilko v. Swan*, 346 U.S. 427, 74 S.Ct. 182, 98 L.Ed. 168 (1953).

9. *Office of Supplies, Gov't of Rep. of Korea v. New York Nav. Co.*, 469 F.2d 377, 379–80 (2d Cir. 1972); *Saxis S.S. Co. v. Multifacs Int'l*

tion of a district court to review the record of an arbitration proceeding for mere errors of law or fact.[10]

■ Stravelakis' cross-petition to vacate the arbitration award insofar as it found that Stravelakis breached the contract of affreightment by its failure to nominate a vessel ready to load "lawful" merchandise is without substance. Its contention that the contract was contrary to public policy because it contemplated the shipment of "unlawful" merchandise was rejected by the arbitrators. As they astutely observed, Stravelakis sought to latch on to the illegality that occurred on another vessel, the Venthisikimi, under an entirely separate and discrete single charter and assumed that future shipments under the contract here at issue would also be illegal. They pointed out that, as to shipments to be made under the contract at issue, there were various means and methods available to assure Stravelakis that no illegal cargo was loaded. The cross-motion to vacate the determination of liability is denied.

■ The essence of Dundas' petition to modify or vacate the final award is that it was "grossly unfair" and "irrational" to deny Dundas recovery because Buck had assumed the alleged losses. However, this disregards the evidence presented to the Arbitration Panel. The arbitrators' actions are firmly supported by the *American Renaissance* line of cases which they cited.[11] These cases, among other matters, upheld an arbitration decision to deny recovery to a

charterer because only the subcharterer had sustained the loss in question and thus an award to the charterer would have been an undeserved windfall. This portion of the *American Renaissance* dispute parallels closely the case at hand. It would be an undeserved windfall for Dundas, which has sustained no loss, to be awarded damages when all losses allegedly have been sustained by Buck. Buck, although forewarned of the consequences of its failure to commence an appropriate arbitration proceeding under its contract with Dundas, failed to do so. The Court cannot conjecture the reasons therefor but it is not empowered to rectify that failure or to disregard the contract between Dundas and Stravelakis, their submission under its terms to an arbitration or their substantive rights. Not only has Dundas failed to meet its burden of demonstrating that the arbitrators' final award was in manifest disregard of the law[12] but the award is fully consonant with the law in this Circuit. Accordingly, Dundas' petition also is denied.

So ordered.

Traders, Inc., 375 F.2d 577, 582 (2d Cir. 1967); Amicizia Societa Nav. v. Chilean Nitrate & Iodine Sales Corp., 274 F.2d 805, 808 (2d Cir.), cert. denied, 363 U.S. 843, 80 S.Ct. 1612, 4 L.Ed.2d 1727 (1960); Sweeney v. Morganroth, 451 F.Supp. 367, 369 (S.D.N.Y.1978).

10. *Saxis S.S. Co. v. Multifacs Int'l Traders, Inc.*, 375 F.2d 577, 583 (2d Cir. 1967).

11. *American Renaissance Lines, Inc. v. Saxis Steamship Co.*, 502 F.2d 674 (2d Cir. 1974); *Saxis S.S. Co. v. Multifacs Int'l Traders, Inc.*, 375 F.2d 577 (2d Cir. 1967). *See also Orion Shipping & Trading Co. v. Eastern States Petroleum Corp. of Panama, S.A.*, 312 F.2d 299 (2d Cir.), *cert. denied*, 373 U.S. 949, 83 S.Ct. 1679, 10 L.Ed.2d 705 (1963).

12. *Cf. Saxis S.S. Co. v. Multifacs Int'l Traders Inc.*, 375 F.2d 577, 582 (2d Cir. 1967).