SPERRY INTERNATIONAL TRADE, INC., Petitioner,

v.

GOVERNMENT OF ISRAEL, Respondent.

No. 81 Civ. 5670(MP).

United States District Court, S. D. New York.

Feb. 24, 1982.

Holtzmann, Wise & Shepard by Norman Solovay, Baker & McKenzie by Robert B. Davidson, New York City, for petitioner.

Finley, Kumble, Wagner, Heine, Underberg & Casey by Jeffrey A. Fillman, Marshall H. Fishman, New York City, for respondent.

## OPINION

MILTON POLLACK, District Judge.

Petitioner Sperry International Trade, Inc. ("Sperry" hereafter) seeks confirmation of an Arbitration Award which respondent, Government of Israel ("GOI") opposes and seeks to have vacated. 9 U.S.C. § 9 (1976) and N.Y. CPLR § 7510. For the reasons indicated hereafter the motion to confirm the Award will be granted.

*The procedural history*

The procedural history of the dispute between the parties will aid an understanding of the issues.

The parties entered into a contract dated July 28, 1978 which contained a broad agreement for arbitration of all disputes arising thereunder or in connection therewith to be settled under the rules of the American Arbitration Association. Sperry was to design and build a communications system for GOI. The contract conditioned GOI's obligation to make certain payments on GOI's receipt of an irrevocable Letter of Credit in its favor. The Letter of Credit was originally in the amount of $11,847,-749.00 but was increased to, and became the amount of $15,008,098.00.

The project apparently encountered great difficulties from the start. On August 3, 1981 Sperry filed with the AAA a Demand for Arbitration claiming that GOI had obstructed Sperry's attempts to perform the contract and seeking a declaration that GOI was in breach and also seeking damages of about $10,000,000. GOI denied Sperry's allegations and asserted eleven counterclaims.

On September 11, 1981 Sperry obtained an Order to Show Cause in this Court requiring GOI to show why it should not be required to proceed with the arbitration and why it should not be enjoined meanwhile from drawing down under the Letter of Credit.

On October 9, 1981, Sperry halted all work on the project.

On October 16, 1981 this Court heard Sperry's motion to compel arbitration to be proceeded with and for a preliminary injunction and GOI's cross-motions connected therewith. The Court dismissed GOI's objections to the appointment of non-United States citizens as arbitrators,[1] recommended that the AAA proceed on the matter with due dispatch, and stayed GOI from drawing down on the Letter of Credit until April 1, 1982 pending an early ruling of the arbitrators permitting the draw down of the funds.[2]

On January 21, 1982, the Second Circuit reversed that part of this Court's decision concerning the Letter of Credit. It held that this Court had improperly issued a preliminary injunction because Sperry had not, as a matter of law, demonstrated irreparable harm since the potential damage to Sperry was strictly monetary. Whether the contractual condition had arisen for a draw down of the proceeds was not then a subject of litigation. The Court of Appeals expressly stated that it expressed no view as to the other elements that a movant must establish in order to obtain injunctive relief, viz., the merits.

On January 27, 1982 the GOI furnished Citibank, N.A., the issuer of the Letter of Credit, with the Sight Draft and Certification required by its terms to effect a drawing thereunder, and requested Citibank, N.A. to transmit the proceeds to an account at Bank Leumi. On February 2, 1982 Citibank, N.A. acknowledged that the certification was in order so far as it was concerned. However, before the proceeds were transmitted as requested, Citibank, N.A. was stopped therefrom by an Order of Attachment of GOI's account issued on January 31, 1982 at the instance of Sperry in a State Supreme Court action. The Warrant of Attachment was served on Citibank, N.A. on February 1, 1982 by the Sheriff of New York County. GOI removed the action from the state to this Court on February 2, 1982 pursuant to 28 U.S.C. § 1441(d) on the ground that GOI is a foreign state and then moved in this Court to vacate the attachment. A hearing on that motion was set for February 9, 1982.

Early in the morning of February 9, 1982 and before the hearing set on the motion to vacate the state court attachment, the Arbitrators handed down an Award requiring both parties to escrow in a joint account the amount of the proceeds of the Letter of Credit pending resolution of the further issues to be arbitrated or until otherwise dealt with by the Arbitrators or the Courts. They did not reach the issues of liability for breach and damages. Those issues have been set for hearing commencing late in March 1982.

The next day, February 10, being apprised of the Award, Judge Cannella on defendant's motion vacated the Order of Attachment obtained in the state court. Judge Cannella's Memorandum indicates that there was no showing that the attachment was needed to secure satisfaction of a judgment following the arbitration, stating however that he made no findings on the subject whether the GOI had explicitly waived its immunity pursuant to either the contract or treaties between the United States and Israel. In a footnote Judge Cannella also stated that he made no findings with respect to the propriety of the Arbitration Award of February 9, 1982. All other applications and related matters were referred to this Court.

On February 10, 1982 the GOI demanded that Citibank wire the proceeds of the Letter of Credit to Bank Leumi. Citibank did not comply.

At 3:15 P.M. on February 10, 1982 Judge Cannella signed an Order to Show Cause returnable February 18, 1982 on Sperry's

---

1. A further objection by GOI concerning the security clearances of Sperry's witnesses and consultants was dealt with by a stipulation by Sperry that it would obtain the necessary clearances.

2. The Letter of Credit was also extended to April 1, 1982.

motion to confirm the Arbitration Award. The Order to Show Cause provided that pending the hearing of Sperry's application to confirm the Award GOI "is stayed from taking any action to collect the proceeds of the letter of credit or to remove the proceeds resulting from any payment of that letter of credit from their present location at Citibank, N.A." GOI then served a cross-motion to vacate the Award returnable at the same time.

After the hearing herein on February 18, 1982 on the motions, and with the consent of both parties, the restraint against any removal of the proceeds of the Letter of Credit from Citibank, N.A. was continued by the Court until the determination of the motions to confirm or vacate the Award.

Both parties had appeared before the Arbitrators on February 8, 1982 and made written and oral submissions on the Letter of Credit matter. The Arbitrators were made fully aware of the rival claims and the equities each party urged.

### The Award

The equitable relief granted by the Arbitrators on February 9, 1982 was in the following terms:

Upon the motion of Claimant, in an arbitration before this Tribunal commenced by a Demand for Arbitration dated August 3, 1981 (as amended), for injunctive relief with respect to a Letter of Credit (no. WCG–150297) purchased by Claimant from Citibank, N.A., or the proceeds thereof, and for other relief, and upon hearing and considering the arguments presented and the large number of documents submitted (directly or during the month prior to the hearing, through the American Arbitration Association) on behalf of Claimant and Respondent in favor of and in opposition to such injunctive and other relief;

Now, upon due consideration, the arbitrators order as follows:

1. The proceeds of said Letter of Credit shall be paid into an escrow account ("Escrow Account") in the joint names of Claimant and Respondent with such bank or other entity in the United States of America as shall be agreed upon in writing by Claimant and Respondent prior to the release of such proceeds by Citibank, N.A. or, in default of such agreement, with Citibank, N.A.

2. Claimant and Respondent shall maintain the Escrow Account in their joint names as aforesaid and the moneys or other investments standing to the credit thereof, including all interest or other income which may be earned thereon, shall not be withdrawn or transferred until (and then only in such manner, on such terms and in such amount, whether as to the whole or in part, as) Claimant and Respondent shall so agree in writing or, in default of such agreement, this Tribunal or a Court in the State of New York or Federal Court in the United States of America shall finally so determine.

3. Claimant and Respondent shall not permit the Escrow Account to become subject to any lien or encumbrance without the leave of this Tribunal or of a Court in the State of New York or Federal Court in the United States of America.

\* \* \* \* \* \* ⌐

8. This order shall constitute an Award of the arbitrators and either party is at liberty to apply forthwith to the United States District Court for the Southern District of New York for confirmation and/or enforcement thereof.

### The objections to confirmation and enforcement and the Award

In brief, GOI contends that confirmation of the Award would be inconsistent with the January 21, 1982 Court of Appeals decision in this matter since, in the view of GOI, the Arbitrators had granted the same preliminary injunctive relief as the Court of Appeals has said is not appropriate or available as a matter of law. GOI argues further that by compelling GOI to "freeze" the amount of the proceeds of the Letter of Credit in a segregated account, the Arbitrators effectively had ordered an attachment

of proceeds of the Letter of Credit and in this respect their Award allegedly violates the Foreign Sovereign Immunities Act ("FSIA") 28 U.S.C. § 1610(d). Thus, GOI contends that the Award reflects a "manifest disregard" by the Arbitrators of the governing law and that they "exceeded their powers". *See,* 9 U.S.C. § 10(d). As an added contention GOI suggests that the Award does not purport to finally determine the merits of the conflicting breach of contract claims for the rights of either of the parties to the $15,000,000 proceeds of the Letter of Credit and consequently is interlocutory and not subject to confirmation by Court action at this time.

*The applicable law*

The relevant provision of the Federal Arbitration Act, 9 U.S.C. § 9 (1976), makes it clear that judicial confirmation of an arbitration award is a ministerial act that a Court must undertake unless at least one of the specifically enumerated grounds in 9 U.S.C. § 10 or § 11 exists for vacating the Award. Section 9 reads, in relevant part:

> If the parties in their agreement have agreed that a judgment of the court shall be entered upon the award made pursuant to the arbitration, and shall specify the court, then at any time within one year after the award is made any party to the arbitration may apply to the court so specified for an order confirming the award, *and thereupon the court must grant such an order unless the award is vacated, modified, or corrected as prescribed in sections 10 and 11 of this title.* If no court is specified in the agreement of the parties, then such application may be made to the United States court in and for the district within which such award was made. (emphasis added).

The only statutory ground urged by the GOI for vacating and not confirming the Award, and thus the only one relevant to these motions, is 9 U.S.C. § 10(d) which provides that an Award may be vacated where "the arbitrators exceeded their powers, or so imperfectly executed them that a mutual, final, and definite award upon the subject matter submitted was not made."

This Circuit has further recognized a non-statutory ground for vacation of such awards, also pressed by the GOI,—i.e., where the arbitrators have shown a "manifest disregard" of the law.

The vacation of arbitration awards is disfavored, and the grounds therefor are to be strictly construed. As the Second Circuit recently noted in *Diapulse Corporation of America v. Carba, Ltd.,* 626 F.2d 1108, 1110 (2d Cir. 1980):

> The *purpose of arbitration* is to permit a *relatively quick* and inexpensive *resolution* of contractual disputes by *avoiding* the expense and delay of *extended court proceedings.* Accordingly, it is a well-settled proposition that judicial review of an arbitration award should be, and is, very narrowly limited. A federal court may vacate or modify an arbitration award only if one of the grounds specified in 9 U.S.C. §§ 10 & 11 is found to exist. (citations omitted) (emphasis added)

*See also Dundas Shipping & Trading Co. v. Stravelakis Brothers, Ltd.,* 508 F.Supp. 1000, 1003–04 (S.D.N.Y.1981), in which Judge Weinfeld stated:

> [T]he Court's power to review the arbitrators' award is "severely limited"; it is confined to the grounds specified in 9 U.S.C. § 10 or when the award is the product of a "manifest disregard" of applicable law, a judicially-created addition to the proscriptions of 9 U.S.C. § 10 which is also "severely limited". It is not the function of a district court to review the record of an arbitration proceeding for mere errors of law or fact. (footnotes omitted).

An arbitration panel may grant equitable relief that a Court could not. *See, e.g., Rochester City School District v. Rochester Teachers Association,* 41 N.Y.2d 578, 362 N.E.2d 977, 394 N.Y.S.2d 179 (1977) in which the dissatisfied party had moved to vacate an Award requiring the school to grant some sabbaticals to teachers despite financial difficulties. The Court on appeal reversed the lower court's vacation of the Arbitration Award, stating:

In other words a court may not vacate an Award because the arbitrator has exceeded the power the court would have, or would have had if the parties had chosen to litigate, rather than to arbitrate the dispute. Those who have chosen arbitration as their forum should recognize that arbitration procedures and awards often differ from what may be expected in courts of law. 41 N.Y.2d at 582, 362 N.E.2d at 981, 394 N.Y.S.2d at 182.[3]

*See also Haulage Enterprises Corp. v. Hempstead Resources Recovery Corp.*, 74 A.D.2d 863, 426 N.Y.S.2d 52 (2d Dept. 1980), and *Park City Associates v. Total Energy Leasing Corp.*, 58 A.D.2d 786, 396 N.Y.S.2d 377 (1st Dept. 1977).

■ Only awards that are final are subject to judicial review. Final awards are those that "purport to resolve finally the issues submitted to them." *Michaels v. Mariforum Shipping, S.A.*, 624 F.2d 411, 414 (2d Cir. 1980). Disposition of an issue that is severable from other issues still before the arbitrators may be deemed final and subject to confirmation. *See, e.g., Puerto Rico Maritime Shipping Authority v. Star Lines, Ltd.*, 454 F.Supp. 368, 372 (S.D.N.Y. 1978) ("[I]f an award is valid in part and invalid in part, and the valid portion concerns claims that are 'separable' from and 'non-dependent' on claims covered by the invalid portion, the valid portion of the award is confirmable, notwithstanding the absence of an award that finally disposes of all the claims that were submitted to arbitration.").

### The Arbitrators did not exceed their powers

■ The GOI's argument that the Arbitrators exceeded their powers and ignored the laws of res judicata and collateral estoppel, by redetermining an issue already resolved by the Court of Appeals has fatal flaws. It *assumes mistakenly*, as the record

of the Arbitration proceeding and the GOI's own arguments to the Panel and to this Court clearly show, that the Arbitrators were dealing with the same issue and same facts as did the Second Circuit in its decision of January 21, 1982. In point of fact, however, the questions before the Court of Appeals were whether Sperry had shown such overreaching and fraud in the contractual dealings as to entitle Sperry in effect to rescind its Letter of Credit, and such irreparable harm by reason thereof if the Letter of Credit was allowed to be drawn upon, as to justify the issuance of a preliminary injunction preventing Israel from drawing down on it. The Second Circuit decided that no irreparable harm had been shown because money only was involved and never reached the issue of underlying fraud in the contractual dealings or the satisfaction of the contractual conditions for calling down the proceeds of the Letter of Credit. By the time the parties went before the Arbitrators the GOI, as it repeatedly argued to the Arbitrators and to this Court, had issued the contested certification of entitlement to the proceeds under the Letter of Credit. The issue before the Panel then became whether the GOI was entitled under the terms of the contract to draw at all against the Letter of Credit and whether having drawn thereon violated the contract and intent of the parties and constituted overreaching conduct and an improper certification to the Citibank, N.A. that the GOI was entitled to draw down.

This came to the fore at a number of points in the arbitration proceedings. Sperry formulated its argument to the Panel as follows:

> On the basis of this showing, I think it is pretty clear that Sperry is the true Claimant here, Sperry is the victim.... We appeal to the arbitrators in the exercise of their equitable discretion and pow-

---

**3.** The Second Circuit has noted that resort to state law may be useful in the area of arbitration law where federal precedents are scarce. *Michaels v. Mariforum Shipping, S.A.*, 624 F.2d 411, 413 n.3 (2d Cir. 1980) ("the instant case arises under the Federal Arbitration Act and is therefore governed by federal law. Neverthe-

less, in view of the relative paucity of precedents on the particular issue and the similarity of language with regard to judicial review between the federal Act and the corresponding provision in the New York statute ... we have looked to New York State decisions, as well.")

ers to prevent the GOI from pocketing another $15-million worth of Sperry funds at this critical time in Sperry's financial history.

The Arbitrators repeatedly questioned the parties as to the content of the Letter of Credit, its purpose, and how its wording differed from that of Section 59 of the contract, (i.e., the provision in the contract calling for a Letter of Credit).

Mr. Pettit [Arbitrator]:

I would like us all to be clear about the text of the letter of credit as it now stands by virtue of the various amendments which have taken place. I would then like to hear the views of counsel for both parties on the interpretation of the letter of credit and whatever the condition is enabling a drawdown to be claimed and made. I.e., if, for example, the condition is that GOI is entitled to the amount claimed and payable under the letter of credit for nondelivery in accordance with the contract, then I would be interested also in hearing the views of counsel for both parties on whether the present state of affairs means that that condition has been met.

The Arbitrators noticed, and the parties conceded, that the terms of the Letter of Credit itself, and Section 59, were different with respect to the conditions for a drawdown.

[Sperry]: I think the language was clear and substantial breach of the contract. That is Section 59 of the terms and conditions of the contract.

\*　　\*　　\*　　\*　　\*　　\*

[Arbitrator] That was a covenant to provide the letter of credit which in any event was provided on somewhat different terms from the language contained in that provision?

[Sperry] That's correct. I think you are free to examine both, though, and probably should. And it is all part of the intent as between the parties.

[Arbitrator] That is partly my reason for trying to focus on the exact wording of the letter of credit as issued.

The GOI's response to the variance noted by the Arbitrators between the Letter of Credit and Section 59 of the contract was that Section 59 was allegedly irrelevant in so far as it conflicted with the later-issued Letter of Credit.

Section 59 of the contract states:

Buyer's obligation to make the payments of Milestones 1 and 2a is conditioned upon receipt by Buyer of an irrevocable Letter of Credit in Buyer's favor in form and substance and issued by a bank satisfactory to Buyer providing for payment of Buyer's draft at sight in an amount not exceeding the total amounts paid by Buyer provided such draft is accompanied by Buyer's certification that it is entitled to the amount covered by such draft *by reason of a clear and substantial breach* of this Agreement (Emphasis added)

The Letter of Credit reads:

Your draft at sight in an amount not exceeding the total amounts paid by you provided such draft is accompanied by your certification that you are entitled to the amount covered by such draft *by reason of non-delivery* in accordance with this contract No. 6977 or by reason of denial of the necessary export licenses. (Emphasis added).

This contract plausibly could be read in accordance with the intent thereof as claimed by Sperry which would imply that the GOI had overreached the terms of the contract and improperly certified that the conditions for draw down of the proceeds existed. There was no obligation of the bank to go behind such a certification to ascertain its verity. There was an obligation of the GOI to certify only if "in accordance with" Section 59 of the contract, viz., the contemplated "clear and substantial breach". Sperry contended in the arbitration that the certification to the Citibank to obtain the proceeds of the Letter of Credit did not conform to the contract since GOI could not validly claim that Sperry was clearly and substantially in breach of the Agreement.

Sperry presented the Arbitrators with a calendar of alleged faults of the GOI under

the contract to support its claim that it was GOI's misconduct which had caused Sperry to halt work on the contract.

Sperry claimed that design deficiencies could not be attributed to it; that the GOI knew of but concealed problems during the price negotiations; that demands on it had been made to do work outside the contract; that it had been intentionally delayed by the GOI in Sperry's attempts to perform as a result of GOI's problems in readying sites for the installations; that agreed methods of performance had been repudiated by the GOI; that intransigent positions delayed the work; that alleged security considerations were invoked to keep needed information from Sperry; that developmental equipment required cooperation that was not forthcoming; and that false accusations of nonperformance were made to obscure the GOI's own problems.

Sperry argued that it had already put in $20,000,000 of performance for which it was as yet unreimbursed and it had not been paid any of its expected profits on the job of another $10–15 million.

In the light of the foregoing circumstances Sperry argued that it would be inequitable to permit the GOI "to walk away" at this time with an additional $15,000,000, in effect constituting a further investment by Sperry in the project. Sperry pointed out that the GOI had not yet expended or incurred the alleged reprocurement expenses required to complete the project. On no conceivable basis in Sperry's view would Sperry be called upon for another $15,000,-000 or the GOI be required to expend that until the accounts between the parties were settled by the Arbitrators.

All these points were vigorously contradicted by GOI.

The Solomonic resolution of the Award to take the money from both parties of course does not decide the merits. The Award makes rational sense at this stage of the Arbitration.

*The Foreign Sovereign Immunities Act of 1976 is inapplicable*

■ The GOI further contends that the Arbitration Award, if enforced, would oper-ate as a pre-judgment attachment and would therefore be improper under the FSIA, 28 U.S.C. § 1610(d). This misreads the Award, which does not direct an attachment at all. The Award is an *in personam* order for a joint escrow deposit by both parties of the $15,000,000 in controversy arising from the certification under the Letter of Credit.

On February 10, 1982 Judge Cannella vacated the attachment of the proceeds of the Letter of Credit and of the additional funds of the GOI on deposit with Citibank, N.A. His opinion does cite the FSIA but then expressly disavows any finding on whether immunity under that statute was waived by the Contract of the parties or the treaties between Israel and the United States of America. He also specifically held that he made no finding as to the validity and effectiveness of the Arbitration Award.

Even assuming but not conceding that the Award as enforced were viewed as operating in the same manner as a pre-judgment attachment, it is clear that Section 1610(d) of FSIA would not be violated as the GOI explicitly waived its immunity in the contract between the parties. The purpose of the Award is obviously to secure the party entitled to the $15-million rather than to ground jurisdiction of a controversy which is not permitted by the statute.

The GOI explicitly waived its sovereign immunity in respect of an Award such as made here, by the terms of Section 61 of the contract:

Buyer [GOI] hereby waives any and all rights to claim sovereign immunity *in any court* of competent jurisdiction within the United States with respect to any suit in equity, action at law, *or arbitration* proceeding instituted by Seller. Buyer further waives any right to sovereign immunity with respect to any *attachment, levy* or execution resulting from a decree or judgment of any of the aforementioned courts *on its commercial* or quasi-governmental property or any *funds*, liquidated or unliquidated, or securities, negotiable or non-negotiable, deposited in or handled

by any banking institution or other entity within the United States. (Emphasis added)

The GOI's argument to this Court that by the waiver of any attachment resulting from a "decree or judgments" the parties intended to refer only to "final" decrees and judgments, is adequately answered by Section 45 of the contract which provides that *"any award, order, or judgment pursuant to such arbitration shall be deemed final* and may be enforced in any court of competent jurisdiction in Israel, and the U.S.A." (Emphasis added). Moreover, section 45 providing that "neither party shall be precluded hereby from seeking provisional remedies in the courts of any jurisdiction including, but not limited to, temporary restraining orders, preliminary injunctions," clearly contemplates that pre-judgment attachments were to be obtainable in the courts and immunity therefrom, as we have seen was expressly waived in section 61 of the contract.

The second requirement of Section 1610(d), that the attachment be one for securing future judgments rather than to obtain jurisdiction, shows the inapplicability of sovereign immunity to this case. The "attachment", if any, cannot be viewed as ordered by the Arbitrators for the purpose of obtaining jurisdiction; the parties were already before the Arbitration Panel by virtue of Section 45 of the contract between them.

*The Arbitration Award was final and subject to enforcement*

■ The GOI argues that the Arbitration Award is an interim decision and cannot be confirmed as it does not purport to resolve all the issues submitted for arbitration. It is true that the Arbitrators have not definitively resolved the question of which party, if any, is in breach of the contract. However, they did decide what the equities required concerning a further $15,000,000 investment by Sperry in the project, namely, the proceeds of the Letter of Credit; this

was a clearly severable issue. Any award is final according to the terms of the contract.[4] As a final Award on a clearly severable issue, it is clearly subject to confirmation by this Court. *See, e.g., Puerto Rico Maritime Shipping Authority v. Star Lines, Ltd.,* 454 F.Supp. 368, 372 (S.D.N.Y.1978).

*Michaels v. Mariforum Shipping, S.A.,* 624 F.2d 411 (2d Cir. 1980), cited by the GOI in its brief, is plainly distinguishable. There the Second Circuit held that where arbitrators made an interim ruling that did not purport to resolve finally the issues submitted to them, judicial review was unavailable. A petition to vacate the Award was addressed on the merits by the District Judge and this was held to be error; he should have dismissed the petition. The Award was entitled a "Decision & Interim Award" and adjudged only five of six counterclaims leaving the sixth counterclaim undecided as well as the issue of damages on the decided five claims.

The Arbitration Award in the instant case was neither labeled nor propounded as an "interim" one. The Award specifically states that either party is at liberty to apply forthwith for confirmation and/or enforcement of the Award to this Court. In contrast with *Michaels, supra,* where only a declaration of liability in part was involved in the Award, in this case affirmative action is required which apparently the GOI is not prepared to take unless so ordered by this Court. Therefore, unless confirmed by this Court and enforced, the Award will be a meaningless and frustrated exercise of the Arbitrators' powers.

## Conclusion

The issues of whether the GOI properly drew down on the Letter of Credit and what equitable treatment should be made of the proceeds were duly and fully submitted to the Arbitrators, who issued an Award constituting a final judgment on those issues. The relief awarded was well within the scope of the Arbitrators' powers

---

**4.** Section 45 of the contract agreed that "[a]ny award, order, or judgment pursuant to such arbitration shall be deemed final and may be enforced in any court of competent jurisdiction . . ."

under Section 42 of the AAA Commercial Arbitration Rules.

Accordingly, the motion to confirm the Award is in all respects, granted and the cross-motion to vacate the Award is in all respects denied; and it is further

ORDERED AND ADJUDGED that, the Government of Israel shall forthwith instruct Citibank, N.A., that subject to notice to and consent of the Sheriff of New York County and/or the United States Marshal, the proceeds of Letter of Credit no. WCG–150297F issued by Citibank, N.A. now held by Citibank, N.A. shall be paid into an Escrow Account in joint names of Sperry and Government of Israel, with such bank or other entity in the United States of America as shall be agreed upon in writing by Sperry and GOI prior to the release of such proceeds by Citibank, N.A., or, in default of such agreement with Citibank, N.A. Said funds shall be invested at interest in such form and amount as the joint depositors shall agree; and it is further

ORDERED AND ADJUDGED that Sperry and GOI shall maintain the Escrow Account in their joint names as aforesaid and the moneys or other investments standing to the credit thereof, including all interest or other income which may be earned thereon, shall not be withdrawn or transferred until (and then only in such manner, on such terms and in such amount, whether as to the whole or in part, as) Sperry and GOI shall so agree in writing or, in default of such agreement, the Arbitrators in said Arbitration Tribunal functioning herein or a court in the State of New York or Federal Court in the United States of America shall finally so determine; and it is further

ORDERED AND ADJUDGED that Sperry and GOI shall not permit the Escrow Account to become subject to any lien or incumbrance without the leave of said Arbitrators or of a Court in the State of New York or Federal Court in the United States of America; and it is further

ORDERED AND ADJUDGED that any dispute or difference with respect to the terms of the said Award shall promptly be referred to the said Arbitrators for their decision; and it is further

ORDERED AND ADJUDGED that in all further respects, the said Award is confirmed.

SO ORDERED.