**In the Matter of the Arbitration between KONKAR MARITIME ENTERPRISES, S.A., As Owner of the KONKAR PIONEER, Petitioner,**

**v.**

**COMPAGNIE BELGE D'AFFRETEMENT, As Charterer, Pursuant to a Charterparty Dated December 4, 1980, Respondent.**

No. 87 CIV. 2915 (PKL).

United States District Court,
S.D. New York.

Aug. 25, 1987.

---

Dunn & Zuckerman, P.C., New York City (Peter M. Bellsey, of counsel), for petitioner.

Hill, Rivkins, Carey, Loesberg, O'Brien & Mulroy, New York City (Francis J. O'Brien, of counsel), for respondent.

## OPINION & ORDER

LEISURE, District Judge:

Petitioner moves, pursuant to 9 U.S.C. § 9, to confirm an arbitration award dated March 25, 1987. Respondent cross-moves, pusuant to 9 U.S.C. § 10, to vacate the award.

### Factual Background

The parties entered arbitration to settle a dispute over $202,889.29 in charter hire which respondent, the charterer, withheld from petitioner, the owner of the "Konkar Pioneer" (the "ship").[1] The withdrawal of one arbitrator and the illness and subsequent withdrawal of another arbitrator delayed the commencement of arbitration proceedings.

On March 15, 1985, petitioner submitted its preliminary statement of claim, 11 exhibits, and its motion for an interim award of withheld charter hire. Respondent subsequently requested that petitioner produce, among other documents, its file of telexes and correspondence relating to the prefixture negotiations and the ship's logs for the period from January 15, 1981, through March 15, 1981. In response, petitioner produced "those telexes constituting the prefixture negotiation between brokers...." *See* Exh. 12 to Affidavit of Douglas R. Burnett, Esq., sworn to on May 15, 1987 (the "Burnett Affidavit"). Petitioner refused to produce the ship's logs because they had been stored in a warehouse in Greece. *Id.* Petitioner agreed, however, to produce the logs if the panel of arbitrators (the "Panel") directed it to do so. *Id.* By letter dated September 13, 1985, respondent requested that the Panel order petitioner to produce the ship's logs. Exh. 14 to the Burnett Affidavit.

On December 6, 1985, the Panel ordered petitioner to produce the ship's logs for the period from January 15, 1981, through February 9, 1981. The Panel also set a schedule for submission of the parties' remaining papers. Respondent was ordered to submit its "proofs, evidence and brief" within 30 days after receiving the logs. Any reply briefs, by either or both parties, were to be exchanged within 10 days of respondent's submission. Finally, the Panel ordered respondent to place $202,889.29 in an interest-bearing joint escrow account pending the final award. Exh. 18 to the Burnett Affidavit.

In a letter dated December 10, 1985, respondent protested the Panel's order with respect to the escrow account. Exh. 19 to the Burnett Affidavit. In a letter dated December 20, 1985, the Panel refused to modify its prior order. Exh. 20 to the Burnett Affidavit. Respondent never deposited the required sum into the escrow

---

**1.** Respondent justified its withholding of charter hire on two grounds. First, it claimed damages of $81,956.67 resulting from petitioner's misdescription and alleged misrepresentation of the ship's loaded draft. Second, it claimed a deduction of $120,932.62 for time that the ship allegedly spent off-hire and in repairs at Mobile, Alabama. *See* Affidavit of Douglas R. Burnett, Esq., sworn to on May 15, 1987 (the "Burnett Affidavit"), Exh. 2 annexed thereto at 1.

account, however. Exh. 2 to the Burnett Affidavit at 9.

On January 6, 1986, petitioner produced all documents required by the Panel's order dated December 6, 1985. On February 7, 1986, respondent timely submitted its brief (the "Main Brief") and supporting evidence with the Panel. Exh. 1 to the Affidavit of Peter M. Bellsey, Esq., sworn to on June 9, 1987 (the "Bellsey Affidavit"). By February 25, 1986, petitioner had voluntarily complied with respondent's request for production of the ship's logs for the period ending on February 22, 1981, and not previously produced. Exh. 32 to the Burnett Affidavit.

After receiving respondent's Main Brief, petitioner requested a 30–day extension of the deadline for filing its reply. Exh. 22 to the Burnett Affidavit. Respondent objected to the request. In an order dated February 14, 1986, the Panel granted petitioner an extension to March 19, 1986. It stated that if petitioner submitted new evidence in reply, counsel for respondent would "be given an opportunity and sufficient time to review such documentation with his client and submit a reply brief should he so desire." Exh. 25 to the Burnett Affidavit. Petitioner timely filed its reply brief with five new exhibits annexed thereto. Exh. 2 to the Bellsey Affidavit. Respondent filed its supplemental brief in response (the "Sur-reply") with two additional exhibits annexed thereto on May 2, 1986. Exh. 6 to the Bellsey Affidavit. For the first time, respondent asserted a claim for lost profits in the amount of $15,191.93. Exh. 30 to the Burnett Affidavit at 19–20.

By letter dated May 8, 1986, petitioner urged the Panel to refuse to hear the new claim for losses contained in respondent's Sur-reply. Exh. 27 to the Burnett Affidavit.[2] In a letter to the parties dated June 6, 1986, the Panel stated that respondent's submission of exhibits with the Sur-reply was "contrary to acceptable and normal procedures." Exh. 29 to the Burnett Affidavit. The Panel stated that, in reaching its final decision, it would ignore the exhibits annexed to the Sur-reply as well as all subsequent correspondence by the parties. *Id.* The Panel advised respondent that if "it wishes to submit a new claim, that would be a matter for a fresh arbitration with which this panel is not concerned...." *Id.*

The Panel issued its final decision on March 25, 1987, awarding petitioner the total amount of withheld hire plus interest. Exh. 2 to the Burnett Affidavit at 9. The Panel also assessed 85% of the arbitration fees against respondent and 15% against petitioner. *Id.* at 10. Respondent now contends that the award should be vacated pursuant to 9 U.S.C. §§ 10(b), 10(c), & 10(d).

With respect to § 10(d), respondent argues that: (1) the Panel exceeded its authority by ordering respondent to create an escrow account; and (2) it failed to issue a final and complete award. With respect to § 10(c), respondent argues that the Panel was guilty of four instances of misconduct. Respondent asserts that the Panel: (1) failed to provide notice and an opportunity to be heard before ordering respondent to create an escrow account; (2) failed to provide notice and an opportunity to be heard before assessing 85% of the arbitration costs against respondent; (3) refused to hear the new claim contained in respondent's Sur-reply; and (4) failed to require petitioner to produce its ship's logs and the file of its broker, Bingham & Bigotte, in a timely manner. As to § 10(b), respondent contends that the Panel was guilty of evident partiality.

## Discussion

"It is not the function of a district court to review the record of an arbitration proceeding for mere errors of law or fact." *Dundas Shipping & Trading Co. v. Stravelakis Bros.*, 508 F.Supp. 1000, 1003–04 (S.D.N.Y.1981). "A federal court may vacate or modify an arbitration award only if one of the grounds specified in 9 U.S.C. §§ 10 & 11 is found to exist." *Diapulse Corp. of America v. Carba, Ltd.*, 626 F.2d

---

**2.** Petitioner also objected to a footnote in the Sur-reply which implied that it had wilfully withheld the fixture file of its broker, Bingham & Bigotte. *Id.*

1108, 1110 (2d Cir.1980) (citations omitted). "Moreover, the showing required to avoid summary confirmation is high." *Ottley v. Schwartzberg,* 819 F.2d 373, 376 (2d Cir. May 27, 1987).

### 1. The Escrow Account

Respondent asserts that the Panel exceeded its powers under the arbitration clause by ordering it to deposit in an interest-bearing, jointly-held escrow account an amount equal to the withheld charter hire. Respondent contends that security was not a matter in dispute and was not an issue submitted to the Panel. Respondent also claims that the Panel's order was issued *sua sponte,* depriving it of notice and an opportunity to be heard. Since respondent did not comply with the Panel's order, and no escrow account was ever established, the disputed order had no direct effect. Moreover, even if respondent had complied, the order stated that the contents of the escrow account would only be "released according to the Panel's Final Award." Exh. 18 to the Burnett Affidavit at 2.

■ Arbitrators have broad discretion in fashioning remedies and " 'may grant equitable relief that a Court could not.' " *Compania Chilena de Navegacion Interoceanica v. Norton, Lilly & Co.,* 652 F.Supp. 1512, 1516 (S.D.N.Y.1987) (citing *Sperry International Trade, Inc. v. Government of Israel,* 532 F.Supp. 901, 905 (S.D.N.Y.), *aff'd,* 689 F.2d 301 (2d Cir. 1982)). In *Norton, Lilly,* the Court upheld the power of a panel of arbitrators, under a broad arbitration clause similar to the one herein, to require the defendant to post "a bond of $123,000 as security against a possible future finding of liability to plaintiff" in the arbitration proceeding. 652 F.Supp. at 1512–14. Similarly, the Panel in this case ordered respondent to fund a joint escrow account which would be distributed according to the terms of the Panel's Final Award. As a matter of substance, the Panel's escrow account order was within its authority.[3] *Contrast Swift Industries,*

*Inc. v. Botany Industries, Inc.,* 466 F.2d 1125, 1127–28, 1133 (3d Cir.1972) (award of cash bond "as an adjunct to declaratory relief" held invalid). Whether the order was issued pursuant to an invalid procedure presents a separate question.

### 2. Notice and Opportunity to Be Heard

Respondent argues that the Panel's alleged failure to provide it with notice and an opportunity to be heard before issuing the escrow account order constitutes "misconduct" under § 10(c). Respondent contends that its refusal to comply with the order created an impression of disobedience "[i]n the eyes of the Panel" which foreclosed an impartial review of the merits of the dispute. Respondent's Reply Memorandum of Law at 11.

■ "All parties in an arbitration proceeding are entitled to notice and an opportunity to be heard." *Totem Marine Tug & Barge, Inc. v. North American Towing, Inc.,* 607 F.2d 649, 651 (5th Cir.1979) (citations omitted). "Parties must be allowed to present evidence without unreasonable restriction ... and must be allowed to confront and cross-examine witnesses." *Wright-Bernet, Inc. v. Amalgamated Local Union No. 41,* 501 F.Supp. 72, 74 (S.D. Ohio 1980). Where a party to an arbitration does not receive a full and fair hearing on the merits, a district court will not hesitate to vacate the award. *See, e.g., Teamsters, Chauffeurs, Etc. v. E.D. Clapp Corp.,* 551 F.Supp. 570, 578 (N.D.N.Y. 1982), *aff'd,* 742 F.2d 1441 (2d Cir.1983); *Amalgamated Cotton Garment & Allied Industries Fund v. JBC Co.,* 608 F.Supp. 158, 164–65 (W.D.Pa.1984); *Seldner Corp. v. W.R. Grace & Co.,* 22 F.Supp. 388, 392–93 (D.Md.1938). In the cited cases, vacatur of the award was justified because the lack of notice or denial of an opportunity to be heard involved the merits of the controversy.

---

**3.** The parties did not enter into a submission agreement in the arbitration proceeding. The issue of security, however, was implicit in the submission of the main dispute to the Panel. Moreover, the Panel order regarding the escrow account was not issued *sua sponte,* but in response to petitioner's motion for an interim award. *See* Exh.'s 10, 13, & 15 to the Burnett Affidavit.

■ In this case, however, respondent received notice and a "fundamentally fair hearing" on the merits. *See Bell Aerospace Co. v. Local 516, International Union*, 500 F.2d 921, 923 (2d Cir.1974). The interim order to which respondent now objects required respondent "to place the sums withheld from hire into an interest bearing escrow account for the benefit of the succesful [sic] party as determined in the Final Award." Exh. 2 to Burnett Affidavit at 2. This order was designed to provide security for enforcement of an award in the event that respondent was found liable, while protecting respondent's interests by holding the funds in escrow. *Cf. Seguros Banvenez, S.A. v. S/S Oliver Drescher*, 761 F.2d 855, 863–64 (2d Cir. 1985) (district court's granting of vessel owner's application for security without provision for protection of charterer's interests and expenses held improper).

In any event, respondent had actual notice that petitioner had moved, on March 15, 1985, for an interim award of the withheld charter hire. *See* Exh.'s 10, 13, & 15 to the Burnett Affidavit. During the more than eight months which passed before the Panel issued its escrow account order, respondent failed to respond to petitioner's pending motion. Rather than grant petitioner's motion for an outright interim award of the withheld charter hire, the Panel decided that the funds in dispute should be jointly held in an escrow account.

■ Respondent's suggestion that its refusal to comply with the interim order caused the Panel to become biased against it is bereft of any support in the record. Vacatur of the award is warranted "only if the bias of the arbitrator is direct and definite; mere speculation is not enough." *Sofia Shipping Co. v. Amoco Transport Co.*, 628 F.Supp. 116, 119 (S.D.N.Y.1986) (citations omitted).[4]

### 3. Finality of the Award

■ Respondent asserts that the Panel's award is not "final" and "definite", within the meaning of § 10(d), because the arbitrators allegedly refused to consider its claim for $136,124.55 in lost demurrage from a subcharterer. Respondent's Memorandum of Law at 25. This assertion is misleading. One of the two issues submitted to the Panel, *see supra* note 1, involved a deduction of $120,932.62 taken by respondent for time that the ship allegedly spent off-hire and in repairs at Mobile, Alabama. By unanimous vote, the Panel clearly considered, and rejected, respondent's deduction of the charter hire owing to petitioner for such period. *See* Exh. 2 to Burnett Affidavit at 5–9.

In its Sur-reply, respondent claimed, for the first time in the arbitration proceedings, that due to the time spent in repairs at Mobile, respondent lost profits in demurrage from a sub-charterer in the amount of $15,191.93.[5] Exh. 30 to the Burnett Affidavit at 18, 19–20. Respondent therefore sought to assert a counterclaim for $15,191.95. Respondent stated that "[i]n view of the fact that this claim was not initially set forth in [our] [M]ain [B]rief, we leave it to the [P]anel's discretion as to whether the claim as an affirmative action should be considered at this time." Exh. 30 to the Burnett Affidavit at 20. Respondent maintained, however, that the alleged loss of $15,191.93 should be considered, in any case, as a defense of equitable recoupment, i.e. as an offset against any damages awarded to petitioner.

Respondent now contends that the Final Award is indefinite because it failed to address the defense of equitable recoupment. In fact, however, the Panel implicitly rejected respondent's claim of any lost profits. In addressing the events at Mobile, the Panel found that respondent had agreed to allow the ship to undergo repairs, that in any event no time was lost due to repairs because the ship returned to

---

**4.** The subject of alleged bias is discussed generally *infra* at pp. 274–75.

**5.** The amount of claimed lost profits ($15,-191.93), added to the amount deducted from charter hire for time spent at Mobile ($120,-932.62), equals respondent's total claimed loss in connection with the events at Mobile ($136,-124.55).

the loading berth without missing its regular turn, and that respondent improperly withheld hire for the period from February 9, 1981, through February 22, 1981. Exh. 2 to the Burnett Affidavit at 5–8. The Panel's conclusion that respondent was not even entitled to deduct its *pro rata* share of charter expenses for the repair period obviously implies that any recovery of lost profits for the same period, either affirmatively or by way of equitable recoupment, would be unwarranted.[6]

4. Exclusion of Certain Exhibits

■ Respondent argues that the Panel's refusal to consider the exhibits annexed to its Sur-reply constitutes prejudicial "misconduct" under § 10(c). Respondent asserts that the Panel's refusal was, in effect, an arbitrarily imposed deadline for filing claims. Moreover, respondent complains that it had previously been promised an opportunity to respond to petitioner's reply brief.

"Every failure of an arbitrator to receive relevant evidence does not constitute misconduct requiring vacatur of an arbitrator's award," *Hoteles Condado Beach v. Union de Tronquistas Local 901*, 763 F.2d 34, 40 (1st Cir.1985) (citation omitted). "Vacatur is appropriate only when the exclusion of relevant evidence 'so affects the rights of a party that it may be said that he was deprived of a fair hearing.'" *Id.* (citing *Newark Stereotypers' Union No. 18 v. Newark Morning Ledger Co.*, 397 F.2d 594, 599 (3d Cir.), *cert. denied*, 393 U.S.

954, 89 S.Ct. 378, 21 L.Ed.2d 365 (1968)). "[T]he arbitrators are charged with the duty of determining what evidence is relevant and what is irrelevant and, barring a clear showing of abuse of discretion, the Court will not vacate an award based on improper evidence or the lack of proper evidence." *Petroleum Transport, Ltd. v. Yacimientos Petroliferos Fiscales*, 419 F.Supp. 1233, 1235 (S.D.N.Y.1976) (citations omitted), *aff'd*, 556 F.2d 558 (2d Cir.1977). *See also National Post Office Mailhandlers v. U.S. Postal Service*, 751 F.2d 834, 841 (6th Cir.1985). Respondent has made no such showing. *See* Respondent's Memorandum of Law at 25–29; Respondent's Reply Memorandum of Law at 12–14.[7]

Respondent contends that the Panel's order of February 14, 1986, which granted petitioner an extension of the deadline for filing its reply brief, indicated that respondent would have an opportunity to respond thereto. While the February 14 order states that respondent would be permitted to review any new evidence submitted by petitioner and to submit a supplemental "brief" in response, it does not state that respondent would thereafter be allowed to submit new evidence. Exh. 25 to the Burnett Affidavit. A careful review of the scheduling orders entered by the Panel indicates that respondent was not misled as to the deadline for submitting evidence. *See* Exh. 18 to the Burnett Affidavit at 2 (setting deadline for submission of respondent's "proofs" and "evidence"). *Cf.*

6. Citing a letter from the Panel dated June 6, 1986, *see* Exh. 29 to the Burnett Affidavit, respondent has assumed that the arbitrators refused altogether to consider its claim of lost profits. In fact, however, the Panel simply decided to "ignore any documents attached to Reply Briefs and all later correspondence in determining the issues placed before it." Exh. 29 to the Burnett Affidavit. Whether the Panel's exclusion of the exhibits submitted with respondent's Sur-reply warrants vacatur of the award is discussed *infra* at pp. 273–74.

To the extent that respondent's claim of lost profits stems from any alleged conduct of petitioner or its agents other than that involved in the parties' agreement to allow repairs, such a claim would be "separable" from those resolved by the arbitrators. As a general rule, an arbitration award, in order to be final and definite, "must both resolve all the issues submitted to

arbitration, and determine each issue finally so that no further litigation is necessary to finalize the obligations of the parties under the award." *Puerto Rico Maritime Shipping Authority v. Star Lines Ltd.*, 454 F.Supp. 368, 372 (S.D.N.Y.1978). Under an exception to this rule, however, a valid award on a "separable" claim is confirmable, "notwithstanding the absence of an award that finally disposes of all the claims that were submitted to arbitration." *Id.* at 372–73 (citations omitted). *Accord Sperry International Trade*, 532 F.Supp. at 909.

7. In fact, the Panel noted in the Final Award that "[t]he statement submitted from the relief Master at a later time, of which [respondent] complains, was not required to enable the Panel to reach its decision." Exh. 2 to the Burnett Affidavit at 8.

*Reichman v. Creative Real Estate Consultants, Inc.,* 476 F.Supp. 1276, 1287 (S.D.N.Y.1979) (cautioning counsel against informalities of arbitration proceeding); *Ottley v. Sheepshead Nursing Home,* 688 F.2d 883, 890 (2d Cir.1982) (arbitrator's decision on procedural issues held "subject only to limited review"). Moreover, respondent was not deprived of a fair hearing on the merits of the matters resolved in the Final Award.

### 5. Arbitration Costs

■ Respondent contends that the entire award should be set aside under § 10(c) because, in assessing 85% of the costs against it and 15% against petitioner, the Panel took into consideration respondent's failure to comply with the escrow account order. Exh. 2 to the Burnett Affidavit at 10. This argument is without merit. Arbitration panels routinely assess 100% of the costs against one party. *See, e.g., Petroleum Transport, Ltd.,* 419 F.Supp. at 1234; *Harbor Island Spa, Inc. v. Norwegian America Line,* 314 F.Supp. 471, 474 (S.D.N.Y.1970). In this case, it was not improper for the Panel to consider respondent's failure to comply with its interim order. There is no indication that the panel sought to impose punitive damages for respondent's breach of contract. *See Kamakazi Music Corp. v. Robbins Music Corp.,* 684 F.2d 228, 230–31 n. 4 (2d Cir.1982); *John T. Brady & Co. v. Form-Eze Systems, Inc.,* 623 F.2d 261, 264 (2d Cir.), *cert. denied,* 449 U.S. 1062, 101 S.Ct. 786, 66 L.Ed.2d 605 (1980).[8]

### 6. Document Production

Respondent's final allegation of prejudicial "misconduct" warranting vacatur under § 10(c) involves the Panel's purported failure to require petitioner to produce documents crucial to its case. Respondent contends that the lack of a production order for certain of the ship's logs and for the file of petitioner's broker, Bingham & Bigotte, deprived it of a fair hearing. *See Bell Aerospace,* 500 F.2d at 923.

■ A party moving to vacate an arbitration award on the ground that the arbitrators failed "to insure that relevant documentary evidence in the hands of one party is fully and timely made available to the other side" must show some resulting prejudice. *Chevron Transport Corp. v. Astro Vencedor Compania Naviera,* 300 F.Supp. 179, 181 (S.D.N.Y.1969). *See also Eddie Steamship Co. v. Czarnikow-Rionda Co.,* 480 F.Supp. 731, 734 (S.D.N.Y.1979). With regard to the ship's logs, respondent had access to all of the logs, except those for the period following February 16, 1981, before it submitted its main brief in opposition to the petition. Moreover, it first received copies of the remaining logs nearly two months before it submitted its Sur-reply. *See* Exh. 32 to the Burnett Affidavit. Respondent has failed to show any prejudice stemming from the timing of petitioner's production of the logs. *See* Respondent's Memorandum of Law at 32; Burnett Affidavit at ¶ 19.

■ With regard to the Panel's failure to order production of the Bingham & Bigotte file, respondent contends that it was "severely prejudiced...." Respondent's Memorandum of Law at 31. Specifically, respondent states that without the file it was unable to establish that an alteration in the charterparty was made intentionally and constituted a material misrepresentation. *Id.* A majority of the Panel, however, based its award on a finding that "[r]egardless of the misdescription of draft in the charterparty," respondent "did not suffer actual damages." Exh. 2 to the Burnett Affidavit at 5. *See also id.* at Appendix B (Partial Dissent of Jack Berg) (attributing majority result to conclusion that respondent "suffered no monetary loss"). Therefore, respondent has shown no prejudice resulting from the absence of the broker's files.

### 7. Evident Partiality

Respondent's remaining contention is that the award should be vacated under

---

**8.** Respondent asserts that the assessment of arbitration costs was made without notice and an opportunity to be heard. Respondent itself, however, submitted papers requesting the Panel to impose its costs in the arbitration proceeding on petitioner. Exh. 31 to the Burnett Affidavit at 38.

§ 10(b) because the Panel acted with "evident partiality." It is well-established that § 10(b) requires "a showing of something more than the mere 'appearance of bias' to vacate an arbitration award." *Morelite Construction Corp. v. New York City District Council Carpenters Benefit Funds*, 748 F.2d 79, 83–84 (2d Cir.1984). *See also Florasynth, Inc. v. Pickholz*, 750 F.2d 171, 173–74 (2d Cir.1984). " '[E]vident partiality' ... will be found where a reasonable person would have to conclude that an arbitrator was partial to one party to the arbitration." *Morelite Construction*, 748 F.2d at 84.

 Rather than coming forward with "direct and definite" evidence of bias, *see Sofia Shipping*, 628 F.Supp. at 119, respondent has for the most part simply rehashed its previous arguments in support of the instant motion.[9] Respondent contends that certain rulings which were adverse to its interests "can only be explained" by the arbitrators' "evident partiality." Respondent's Memorandum of Law at 35. For example, respondent asserts that the Panel's escrow account order signified that it had judged the merits of the dispute before receiving respondent's opposition brief. *Id.* at 33–34. Such speculation is clearly insufficient to warrant vacatur of the award. *See Bell*, 500 F.2d at 923.

Accordingly, respondent's motion to vacate the arbitration award is denied in all respects and petitioner's motion to confirm the award is hereby granted. Petitioner's motion for costs and attorney's fees incurred herein is denied.

SO ORDERED.

---

9. Respondent also implies that the Panel improperly received *ex parte* communications from petitioner. *See* Respondent's Memorandum of Law at 34; Burnett Affidavit at ¶ 8. Counsel for petitioner responds that "[a]ny and all conversations that I had with the Panel Chairman were confined to scheduling requests...." Bellsey Affidavit at ¶ 6. Since respondent can show no prejudice from any *ex parte* communications, its allegation of impropriety does not warrant vacating the Panel's award. *See Totem Marine Tug & Barge v. North American Towing*, 607 F.2d 649, 653 (5th Cir. 1979); *Harbor Island Spa, Inc. v. Norwegian America Line*, 314 F.Supp. 471, 474 (S.D.N.Y. 1970).