**Barbara Sagar McCARTHY, Trustee for the Barbara McCarthy Trust, Petitioner,**

v.

**SMITH BARNEY INC., Vergil R. Rorer, and Ray Shouse, Respondents.**

**Smith Barney Inc., Petitioner,**

v.

**Barbara Sagar McCarthy, Trustee for the Barbara McCarthy Trust, Respondents.**

Nos. 95 Civ. 5210(JES), 95 Civ. 11005(JES).

United States District Court, S.D. New York.

July 29, 1999.

Barbara Sagar McCarthy, South Pasadena, FL, pro se.

Office of General Counsel, Smith Barney Inc., New York City, Susan E. Harkins, of counsel, for Smith Barney Inc., Vergil R. Rorer.

## MEMORANDUM OPINION AND ORDER

SPRIZZO, District Judge.

*Pro se* petitioner Barbara McCarthy ("McCarthy"), moves to vacate an arbitration award issued on April 14, 1995 ("Award") in favor of Smith Barney Inc. ("Smith Barney") and its employees, Vergil R. Rorer ("Rorer") and Ray Shouse ("Shouse"). Smith Barney and Rorer cross-move to dismiss McCarthy's petition for lack of subject matter jurisdiction and failure to state a claim on which relief can be granted. Smith Barney has also filed a cross-petition to confirm the Award. For the reasons that follow, McCarthy's petition is dismissed, and Smith Barney's cross-petition is granted.

### BACKGROUND

The dispute between McCarthy and Smith Barney arises from certain investments made in 1982 and 1984 by Shouse, who was McCarthy's broker from May 1982 until January 1988.[1] McCarthy claims that Shouse disregarded her clearly articulated investment goals and financial needs by making unsuitable investments on her behalf. *See* Affidavit of Barbara S. McCarthy, dated February 9, 1996 ("McCarthy Aff."), Exhibit B, AAA Complaint ("AAA Complaint") at ¶ 40. Although Shouse allegedly assured McCarthy that the investments he made on her behalf would both increase her rate of return and protect her liquidity, beginning in June 1982, Shouse invested McCarthy's funds in high-risk limited partnerships. *See id.* at ¶ 13. McCarthy suffered substantial losses on these investments. *See*

McCarthy Aff., Exhibit C, Analysis of Losses.

McCarthy began receiving statements from Smith Barney reflecting the value of her investments in June 1982. *See* AAA Complaint at ¶ 26. During the first few months, the statements were inaccurate. *See id.* Thereafter, the statements she received indicated a decline in the value of her assets. *See id.* at ¶ 34. Despite McCarthy's misgivings, Shouse recommended that McCarthy retain the investments. *See id.* Beginning at the end of 1984, and throughout the first quarter of 1985, Shouse repeatedly reassured McCarthy that her investments were performing as expected and that she should not sell them. *See id.* at ¶ 41. Thereafter, on or about January 29, 1988, Rorer replaced Shouse as McCarthy's broker. *See id.* at ¶ 49. Like Shouse, Rorer assured McCarthy that her investments were performing satisfactorily. *See id.* at ¶ 53. McCarthy claims that she first learned that her investments were performing poorly in 1990. *See id.* at ¶ 54.

On December 29, 1993, McCarthy commenced arbitration proceedings against Smith Barney, Rorer, and Shouse by filing a Demand for Arbitration and Complaint before the American Arbitration Association ("AAA"), in which she alleged violations of the Florida Securities and Investor Protection Act, breach of contract, fraud, and breach of fiduciary duty. *See* AAA Complaint. McCarthy based her demand for arbitration upon the Constitution of the American Stock Exchange ("AMEX"). *See* AAA Complaint at ¶ 1 (citing AMEX Constitution, Art. VIII, § 1). After filing her demand for arbitration, McCarthy brought in Florida state court a motion to compel arbitration before the AAA in Florida. *See* Notice of Petition to Confirm Arbitration Award, dated December 29, 1995 ("Petition to Confirm") at ¶ 7. Smith

---

1. Apparently, Shouse was first employed by E.F. Hutton, which was subsequently acquired by Shearson Lehman. Shearson Lehman's brokerage business was then acquired by Smith Barney. *See* McCarthy's Memorandum of Law in Opposition (styled by McCarthy as a "Joint Pre-Trial Order"), dated March 13, 1996 at 1.

Barney moved to dismiss the motion to compel arbitration, and the Circuit Court of the Sixth Judicial District in Pinellas County, Florida, by Order dated May 17, 1994, granted Smith Barney's motion. *See* Notice of Motion to Dismiss the Petition to Vacate the Arbitration Award, dated December 29, 1995 ("Smith Barney Not. Mot.") at ¶ 11. The court found that McCarthy's demand for arbitration was subject to Rule 605(a) of the AMEX Arbitration Rules, which barred arbitration of any claim arising more than six years prior to the demand for arbitration. However, the court did not decide whether McCarthy's arbitration claims were time-barred under this provision. Rather, the court apparently held that the timeliness of McCarthy's claims should be decided in arbitration rather than by the court. The court further held that the proper venue for arbitration was New York, as opposed to Florida, and that Smith Barney had not refused to arbitrate McCarthy's claims in New York. Because Smith Barney had not refused to submit to arbitration, the Florida court dismissed McCarthy's petition. *See id.*

McCarthy proceeded to transfer the arbitration to New York, at which time Smith Barney and Rorer petitioned the New York State Supreme Court, New York County, to issue a permanent stay of the arbitration, arguing that McCarthy's claims were untimely under AMEX Rule 605(a) and were thus not arbitrable. *See* Smith Barney Not. Mot. at ¶¶ 12–13. On September 29, 1994, the New York court dismissed the petition on *res judicata* grounds, in reliance upon the Florida court's prior decision that the timeliness of McCarthy's claims under the AMEX arbitration rules should be decided in arbitration. *See id.* at ¶ 13.

On March 24, 27, and 28, 1995, the arbitration hearing was held at the New York City office of the AAA. *See* Award. At the beginning of the hearing, McCarthy withdrew her claims against Rorer and Shouse. *See* Smith Barney Not. Mot. at ¶ 15. The arbitrators applied Florida law, rather than AMEX Rule 605(a), to determine whether McCarthy's claims were time-barred. *See* Award. The arbitrators found that the relevant conduct giving rise to McCarthy's claims against Smith Barney occurred when Shouse invested McCarthy's funds in the limited partnerships in 1982 and 1984. *See id.* Inasmuch as the statute of limitations for McCarthy's claims under the Florida Securities Investor Protection Act is not more than five years from the date of the alleged violation, the arbitrators found that McCarthy's claims under this statute were time-barred. *See id.* In addition, the arbitrators found that the limitations period for McCarthy's Florida common law claims of breach of contract, common law fraud, and breach of fiduciary duty was at most four years from the date that McCarthy discovered the facts giving rise to her claims. *See id.* The arbitrators specifically found that McCarthy "was aware of such facts well before December 29, 1989," four years before she brought her demand for arbitration. *See id.* As a result, the arbitrators held that McCarthy's common law claims were also time-barred. *See id.* Because both McCarthy's statutory and common law claims were barred by the statute of limitations, the arbitrators dismissed her claims and required Smith Barney to pay only the administrative fees, expenses, and the costs of the arbitration. *See id.*

## DISCUSSION

### Subject Matter Jurisdiction

 As an initial matter, this Court must address its jurisdiction to hear the parties' cross-petitions to vacate and to confirm the Award. It is well established that the United States Arbitration Act, 9 U.S.C. § 1 *et seq.* ("Arbitration Act"), does not itself afford the federal courts any basis for asserting subject matter jurisdiction. An independent basis for subject matter jurisdiction is thus required in order for a federal district court to have the power to entertain such a petition. *See Harry Hoffman Printing, Inc. v. Graphic Communications, International*

*Union,* 912 F.2d 608, 610–611 (2d Cir. 1990). Here, the underlying dispute between McCarthy and Smith Barney affords no basis for federal question jurisdiction under 28 U.S.C. § 1331, as McCarthy alleges claims only under Florida law. In addition, since both McCarthy and Rorer are citizens of Florida, this Court lacks diversity jurisdiction over McCarthy's petition. *See* AAA Complaint at ¶ 2; Affidavit of Vergil R. Rorer, December 20, 1995 at ¶ 1; 28 U.S.C. § 1332; *Strawbridge v. Curtiss,* 3 Cranch 267, 7 U.S. 267, 2 L.Ed. 435 (1806). In the absence of either federal question or diversity jurisdiction, this Court must dismiss McCarthy's petition for lack of subject matter jurisdiction.

■ With respect to Smith Barney's cross-petition to confirm the Award, however, the Court may properly exercise diversity jurisdiction. In its petition, Smith Barney names neither Rorer nor Shouse as parties. Accordingly, there is diversity between Smith Barney, a Delaware corporation with its principal place of business in New York, and McCarthy, a citizen of Florida. *See* Affidavit of Susan E. Harkins ("Harkins Aff."), dated December 29, 1995, at ¶ 3; 28 U.S.C. § 1332. In addition, the amount in controversy clearly exceeds $50,000.[2] *See* AAA Complaint at ¶ 63.

### Smith Barney's Petition to Confirm

Under section 9 of the Arbitration Act, this Court must grant an order confirming an arbitration award in the absence of one of the grounds enumerated in sections 10 and 11 for vacating or modifying the award. *See* 9 U.S.C. § 9. Hence, the power of this Court is limited to determining whether McCarthy asserts a viable basis for vacating the Award. *See Saxis Steamship Co. v. Multifacs International Traders, Inc.,* 375 F.2d 577, 581 (2nd Cir.1967). The substantive issues raised by the par-

ties before the arbitrators are not otherwise subject to re-examination. *See id.* at 581–82.

■ An arbitration award can be vacated

(1) where the award was procured by corruption, fraud or undue means;

(2) where there was evident partiality or corruption in the arbitrators, or either of them;

(3) where the arbitrators were guilty of misconduct in refusing to postpone the hearing upon sufficient cause shown, or in refusing to hear evidence pertinent and material to the controversy; or any other misbehavior by which the rights of any party have been prejudiced; or

(4) where the arbitrators exceeded his powers, or so imperfectly executed them that a mutual, final, and definite award upon the subject matter submitted was not made.

*See* 9 U.S.C. § 10(a). Beyond these statutory grounds, an arbitration award will be vacated only if it was made in "manifest disregard of the law." *Wilko v. Swan,* 346 U.S. 427, 436–7, 74 S.Ct. 182, 98 L.Ed. 168 (1953), overruled on other grounds, *Rodriguez de Quijas v. Shearson/American Express, Inc.,* 490 U.S. 477, 109 S.Ct. 1917, 104 L.Ed.2d 526 (1989). The party seeking to vacate the award bears the burden of establishing one of the aforementioned grounds. The interests of finality and efficiency require these grounds to be narrowly construed. *See DiRussa v. Dean Witter Reynolds, Inc.,* 121 F.3d 818, 821 (2d Cir. 1997); *Willemijn Houdstermaatschappij, BV v. Standard Microsystems Corp.,* 103 F.3d 9, 12 (2d Cir.1997).[3]

McCarthy raises several grounds upon which she argues this Court should vacate the Award. Specifically, McCarthy contends that (1) her claims were not barred

---

**2.** Subsequent to the filing of the action in 1995, 28 U.S.C. § 1332 was amended to increase the amount in controversy requirement from $50,000 to $75,000.

**3.** The Court is mindful, however, that *pro se* pleadings and motion papers should be liberally construed to raise the strongest arguments they suggest. *See Burgos v. Hopkins,* 14 F.3d 787, 790 (2d Cir.1994).

by the statute of limitations; (2) Smith Barney committed fraud before the New York Supreme Court; (3) Florida was the proper venue for the arbitration; (4) the arbitrators refused to hear evidence regarding the limited partnerships and Shouse's wrongdoings; (5) her privacy was violated by discovery of her personal calendars; (6) she received ineffective assistance of counsel; and (7) she was ill at the time of the arbitration proceedings. However, none of these grounds afford sufficient basis for vacating the Award.

■ First, McCarthy argues that neither her statutory claims nor her common law claims were barred by the statute of limitations and that the arbitrators' determination was in manifest disregard of the law. *See* McCarthy Aff. at ¶ 17. McCarthy does not, however, challenge the arbitrators' interpretation of Florida law governing the duration of the applicable statutes of limitations; rather, she challenges only the arbitrators' determination of when, under the facts of her case, she had sufficient notice of the facts underlying her claims to commence the running of the statute of limitations. As noted above, the arbitrators determined on the basis of the evidence before them that McCarthy's claims were time-barred. This Court declines to undertake the *de novo* review of the evidence that McCarthy requests. A claim that the award was made in manifest disregard of the law requires a showing that the alleged error is "obvious and capable of being readily and instantly perceived [and] ... the arbitrator appreciate[d] the existence of a clearly governing legal principle but decided to ignore ... it." *Carte Blanche (Singapore) v. Carte Blanche*, 888 F.2d 260, 265 (2nd Cir.1989). No evidence is set forth by McCarthy indicating that the arbitrators were aware of, and purposefully ignored, any applicable law. Therefore, McCarthy fails to meet her burden of proof that the Award was made in manifest disregard of the law.

■ Second, McCarthy alleges that Smith Barney committed fraud before the New York Supreme Court. *See* McCarthy Aff., at ¶¶ 18–19. In order to vacate an arbitration award on the grounds that it has been procured by corruption, fraud, or undue means pursuant to 9 U.S.C. § 10(a)(1), the petitioner seeking to vacate the award must show that (1) her adversary engaged in fraudulent activity; (2) the petitioner could not, in the exercise of due diligence, have discovered the alleged fraud prior to the award; and (3) the alleged fraud materially related to an issue in the arbitration. *See Karppinen v. Karl Kiefer Machine Co.*, 187 F.2d 32, 34–35 (2d. Cir.1951); *see also Lazer Electric Corp. v. Cecchi*, 1997 WL 311925, *4 (S.D.N.Y.1997). McCarthy claims that Smith Barney's attorney, Susan Harkins, made false statements in order to deceive the Supreme Court. *See* McCarthy Aff., at ¶ 19. Specifically, McCarthy claims that Harkins's statement that "[n]o prior application seeking relief sought here has been made to this or any court" was made with intent to deceive the court. *See* McCarthy's Memorandum of Law in Opposition, dated March 13, 1996, at p. 2. However, McCarthy's attorney clearly brought this misstatement to the attention of the Supreme Court, which was fully advised of the prior Florida proceedings. Indeed, the Supreme Court rested its decision upon the *res judicata* effect of the prior Florida proceedings and denied Smith Barney's motion. *See* McCarthy Aff., Exhibit E, Decision and Judgment. Thus, Harkins's alleged fraud did not prejudice McCarthy in any way before the New York Supreme Court or during the arbitration proceedings. Accordingly, McCarthy's claim for vacation on the grounds of fraud is clearly meritless.

■ Third, McCarthy seeks vacation by arguing that proper venue for the arbitration lay in Florida, not in New York. *See* McCarthy Aff., Exhibit G, Complaint ("Petition to Vacate"), dated April 14, 1995, at ¶ 1. However, the Florida decision that New York is the proper venue for the arbitration proceeding is *res judicata* on that question. *See* McCarthy Aff., Exhibit D, Order Granting Defendants' Motions to

294

Dismiss and Denying Plaintiff's Motion to Compel Arbitration and for Declaratory Judgment, dated May, 1994, at ¶ 3. Moreover, under the *Rooker–Feldman* doctrine, it would be improper for the Court to undertake an independent review of the correctness of the Florida court's decision. *See District of Columbia Court of Appeals v. Feldman,* 460 U.S. 462, 482, 103 S.Ct. 1303, 75 L.Ed.2d 206 (1983); *Atlantic Coast Line R.R. v. Brotherhood of Locomotive Engineers,* 398 U.S. 281, 287, 90 S.Ct. 1739, 26 L.Ed.2d 234 (1970); *Rooker v. Fidelity Trust,* 263 U.S. 413, 415–416, 44 S.Ct. 149, 68 L.Ed. 362 (1923).

Fourth, McCarthy claims that the arbitrators engaged in misconduct. She argues that the arbitrators' refusal to hear evidence regarding the limited partnerships and the alleged wrongdoing of Shouse constitutes adequate grounds to vacate the Award. *See* Petition to Vacate at ¶ 3. However, there is no indication in the record before the Court that the arbitrators refused to consider any documentary evidence or testimony presented by McCarthy at the arbitration. In fact, McCarthy testified for two days about the limited partnerships and Shouse's actions, and the arbitrators were provided with the relevant documentary evidence. *See* Petition to Confirm at 6. Thus, McCarthy's claim of arbitrator misconduct is equally without merit.

■ Fifth, McCarthy claims that she was sick during the arbitration and that antibiotics interfered with her concentration. *See* Petition to Vacate at ¶ 3. However, since there is no indication that McCarthy ever brought this problem to the attention of the arbitrators or requested an adjournment of the hearing on this basis, McCarthy cannot claim misconduct by the arbitrators in continuing the hearing despite her illness. Similarly, as McCarthy did not object to discovery of her calendars or their use as evidence at the arbitration, she cannot claim misconduct by the arbitrators in allowing Smith Barney to introduce the diaries as evidence at the arbitration.

■ Finally, McCarthy seeks vacation of the Award on the grounds of ineffective assistance of counsel. *See* Petition to Vacate at ¶ 3. However, ineffective assistance of counsel is not among the specified grounds for vacating an award under the Arbitration Act. *See* 9 U.S.C. § 10.

In light of McCarthy's failure to set forth a viable ground for vacating the Award, the Court must grant Smith Barney's motion to confirm the Award.

## CONCLUSION

For the foregoing reasons, the Court dismisses McCarthy's petition to vacate the Award and grants Smith–Barney's cross-petition to confirm the Award. The Clerk of Court is directed to enter Judgment accordingly and to close the above-captioned action.

It is **SO ORDERED.**