BRITISH INSURANCE COMPANY
OF CAYMAN, Plaintiff,

v.

WATER STREET INSURANCE
COMPANY, LTD.,
Defendant.

No. 00 CIV. 0544(NRB).

United States District Court,
S.D. New York.

April 28, 2000.

Brian E. O'Donnell, Riker, Danzig, Scherer, Hyland & Perretti LLP, Morristown, NJ.

Peter H. Bickford, Cozen and O'Connor, New York, NY.

## OPINION AND ORDER

BUCHWALD, District Judge.

Plaintiff British Insurance Company of Cayman ("BICC" or "plaintiff") brings this action pursuant to the Federal Arbitration Act ("FAA"), 9 U.S.C. § 1, *et seq.*, to confirm a favorable interim order of the arbitration panel composed to resolve its underlying contract dispute with the defendant, Water Street Insurance Company ("Water Street" or "defendant"). Water Street cross moves to vacate the award pursuant to section ten of the FAA, 9 U.S.C. § 10, and to stay the arbitration proceedings pending the outcome of this motion. For the reason's set forth below, plaintiff's motion to confirm is granted and defendant's motion to vacate the arbitrator's decision is denied. Defendant's re-

quest for a stay is mooted by the issuance of this opinion and order.

## BACKGROUND

■ Both parties in this action are engaged in the business of insurance and reinsurance and are successors-in-interest to a set of facultative reinsurance agreements [1] ("the Agreements") entered into in the early 1980's that are at the heart of their current dispute.[2] BICC is the ultimate successor to American Centennial Insurance Company ("ACIC") and Water Street is the ultimate successor to Transit Casualty Syndicate ("Transit"), the original parties to the Agreements.[3]

Of greatest relevance to the instant set of motions is Article XVI of the parties' 1982 Semiautomatic Casualty Facultative Reinsurance Contract, which provides, in part:

[i]f any dispute should arise ... with reference to the interpretation of this Agreement or ... with respect to any transaction involved ... such dispute ... shall be submitted to three arbitrators, one to be chosen by each party and the third by the two so chosen.... All arbitrators shall be active or retired executive officers of insurance or reinsurance companies or Underwriters at Lloyd's, London not under the control of either party to this Agreement.

Art. XVI, ¶ A, attached to defendant's Notice of Cross Motion to Vacate the Order ("Def.Notice") as Ex. B. The clause further provides that the arbitrators:

are relieved of all judicial formalities and may abstain from following the strict rules of evidence, and they shall make their award with a view to effecting the general purpose of this Agreement in a reasonable manner rather than in accordance with a literal interpretation of the language,

*id.,* ¶ B, and that, "the decision in writing of any two arbitrators, when filed with the parties hereto, shall be final and binding upon both parties." *Id.,* ¶ C.

In April of 1989, Water Street, through its vice president, sent a letter to BICC's predecessor complaining of the latter's failure to provide certain information and its refusal to allow Water Street to exercise its audit rights under the Agreements, warning that Water Street had reached the conclusion that it was free of liability to BICC's predecessor. Letter of John T. Banks dated Apr. 26, 1989, attached to Def. Notice as Ex. C. Even after BICC allowed a March 1990 audit to take place, Water Street still maintained the position that full disclosure had not been provided and that it had "no alternative but to confirm a complete Reservation of all Rights" under the Agreements. Letter of John T. Banks dated July 10, 1990, attached to Def. Notice as Ex. C (Water Street's "reservation of rights letter").

It was not until 1997 that BICC's immediate predecessor [4] finally issued a demand

---

1. "There are two broad categories of reinsurance contracts: facultative and treaty. Facultative reinsurance covers part or all of an individual policy. Treaty reinsurance covers specific classes of a ceding insurer's portfolio of contracts." *Travelers Indemnity Co. v. Scor Reinsurance Co.,* 62 F.3d 74, 76 (1995). *See also Unigard Security Insurance Co. v. North River Insurance Co.,* 4 F.3d 1049, 1053–54 (1993) (more fully explaining the difference between the two). According to the defendant, the difference between the two is crucial to an understanding of the underlying dispute. *See* Affidavit of Peter H. Bickford dated Mar. 2, 2000 ("Bickford Aff.") ¶¶ 34–35. However, these broad definitions are sufficient for the purpose of our discussion of the

legal standards relevant to the parties' current cross-motions.

2. Unless otherwise noted, the facts described herein are undisputed.

3. For the sake of clarity, however, we will continue to make reference to both parties by their current appellations.

4. In 1996, plaintiff BICC's original predecessor, the Delaware-based ACIC, effectively changed its name and nationality to a Bermudan company named British International Insurance Company, Ltd. ("BIIC"). *See* Assumption Reinsurance Agreement, dated Aug. 29, 1996, attached to the Affidavit of Brian E.

for arbitration through counsel claiming that Water Street owed it $1,569,257.17 under the Agreements. Letter of Shawn L. Kelly dated Dec. 9, 1997, appended to O'Donnell Aff. as Ex. E (BICC's "demand letter").[5] The panel of arbitrators was formally chosen in late 1999. BICC, pursuant to its original demand letter, chose Caleb Fowler ("Fowler"), a former President of CIGNA Property and Casualty Companies and a veteran of over forty arbitrations as both arbitrator and umpire. *See* Ex. 3, appended to the Supplemental O'Donnell Aff., dated Mar. 17, 2000 ("O'Donnell Supp."). Water Street chose Kevin Ruanne ("Ruanne"), "a former insurance company accountant with considerable experience processing and handling facultative insurance contracts and claims, but without any prior arbitration experience." Bickford Aff. ¶ 17. *See also* Bickford Aff. Ex. O. Together, Fowler and Ruanne chose Robert F. Hall, a former vice president and claims adjuster at three national insurance and reinsurance companies, and a 39-time former arbitrator, to serve as the panel's umpire. *See* O'Donnell Supp. Ex. 2.

Counsel for both parties met with the arbitrators for an organizational meeting on October 18, 1999. *See* Transcript of the Proceedings, appended to O'Donnell Aff. as Ex. F ("Tr."). In advance, each of the arbitrators received "issue statements" from the two parties, setting out their initial concerns and theories of the case. *See* Letter of Peter H. Bickford dated Sept. 28, 1999, appended to O'Donnell Aff. as Ex. D. Then, at the meeting, each arbitrator divulged to the parties all of his prior contacts with the parties and the other members of the panel, and gave both counsel an opportunity for further inquiry. Tr. 6–16. Both sides accepted the panel as constituted and signed a stipulation to that effect. Tr. 19; Stipulation dated Oct. 18, 1999, appended to O'Donnell Supp. as Ex. 1.

Before the organizational meeting was adjourned, BICC's counsel raised the topic of its proposal that Water Street be required to post a security to ensure that any recovery awarded to the plaintiff would be available. Tr. 30–31. BICC requested the opportunity to brief the issue, as well as submit a reply brief and to be heard in oral argument. Tr. 31. Hall suggested, and both sides accepted, a procedure whereby the hearing would be done by conference call upon completion of the briefing. Tr. 31–33. Water Street reluctantly accepted BICC's request to file a reply brief, reserved judgment as to whether it desired to file a surreply, and left the scheduling of the briefing "to the panel's discretion." *Id.* The only issue that Hall left open for the panel to discuss was whether the hearing should be "by telephone or in person." Tr. 33.

BICC filed its motion in favor of the security award on October 7, 1999, requesting that Water Street establish a letter of credit or an escrow account in the amount of $1.7 million, pending a final award in the arbitration. O'Donnell Aff. Ex. G. BICC argued, *inter alia,* that at the time the parties had entered into the Agreements, Water Street's predecessor had been a member of the New York Insurance Exchange ("NYIE"), which provided its own particular taking the position that a "full and fair hearing on the amount

---

O'Donnell in support of Plaintiff's Motion to confirm the Arbitration Award ("O'Donnell Aff.") as Ex. B. After the current arbitration had been commenced by BICC's 1997 "demand letter," BIIC again changed its name and nationality to its current iteration, British Insurance Company of Cayman, or BICC, a company formed under the laws of the Cayman Islands in 1998. *See* Assumption Reinsurance Agreement, dated Nov. 30, 1998, attached to the O'Donnell Aff. as Ex. C.

5. The precise nature of the contacts between the two parties in the intervening years between Water Street's 1990 "reservation of rights letter" and BIIC's 1997 "demand letter" is unclear from the record, and not necessary to the determination of the currently pending motions.

of [BICC's] request" was mandatory. *Id.* at 7–10. Finally, Water Street maintained that "no exigent circumstance or equitable basis" justified an order of security since the dispute had gone on for "more than a decade" with "the appearance of unclean hands." *Id.* at 10–11.

BICC filed a reply brief on November 11, 1999. O'Donnell Aff. Ex. I. In it, BICC included additional evidence of Water Street's financial instability, including a June 13, 1989 letter from Water Street's vice president to plaintiff's predecessor admitting that a financing problem, and the New York State Insurance Department's resulting actions, would "severely restrict the ability of [Water Street] to conduct ongoing business" that "may well [make Water Street] subject to liquidation proceedings." *Id.* Moreover, BICC provided a copy of a December 19, 1991 letter by Water Street's current counsel describing the "winding down [of] operations" of the NYIE, which Water Street had argued would provide an additional measure of security in the current arbitration. *Id.* BICC also provided additional proof of its previous attempts to secure payment from Water Street. *Id.* Finally, BICC argued that, although it had referred to New York Insurance Law § 1213 "for guidance," that the panel "has the intrinsic authority to award a pre-hearing security," regardless of the technical procedural requirements of § 1213. *Id.*[6]

During the briefing period, Hall sent a letter to Water Street on behalf of the panel, requesting that defendant provide the panel with its "sworn annual statement and last quarterly statement ... together with documentation showing who owns and controls Water Street." Letter of Robert F. Hall, dated Nov. 8, 1999, appended to Def. Notice as Ex. D. Presumably, this inquiry was meant to assist the panel in determining the necessity and proper amount of any security order. Water Street responded with a November 15, 1999 letter from its counsel asking the panel for clarification as to its motives for requesting the financial information, urging that any such information be provided to the panel *in camera,* and requesting permission to respond to BICC's reply brief. Letter of Peter H. Bickford, dated Nov. 15, 1999, appended to Def. Notice as Ex. E. BICC again took a diametrically opposed position, arguing that an *in camera* submission would be "highly improper and completely unjustified," and that Water Street's request for a surreply would merely "further delay resolution of the pre-hearing security issue." Letter of Brian E. O'Donnell, dated Nov. 16, 1999, appended to O'Donnell Supp. as Ex. 8.

On December 2, 1999, the arbitration panel conferred with one another and made five rulings related to the conduct of the case. Letter of Robert F. Hall, dated Dec. 2, 1999, appended to Def. Notice as Ex. F (the panel's "five points letter"). Without comment, the panel ordered Water Street to produce its records within one week. *Id.* It stated that it did not need to provide a rationale for the order and that Water Street's request to submit a reply brief was denied. *Id.* Water Street reluctantly complied with the panel's order by supplying its 1998 audited financial statements and a "certificate of compliance" issued by the Cayman Islands Monetary Authority, but did so under a cover letter expressing a "full reservation of rights," and again arguing its position that since the current financial statements had nothing to do with the underlying dispute, BICC was not entitled to them. Letter of Peter H. Bickford, dated Dec. 8, 1999,

---

**6.** Plaintiff's reply brief is apparently the last formal brief submitted to the arbitrators. However, in a December 9, 1999 letter from plaintiff's counsel to the members of the arbitration panel, it referred to defendant having filed its *"third* brief on the issue of a pre-hearing security." O'Donnell Supp. Ex. 7

(emphasis original). Although the record is full of subsequent letters by both sides in regard to the issue of a pre-hearing security, neither side has provided the Court with any formal briefs on the topic other than the initial three.

appended to Def. Notice as Ex. G. In that letter, Water Street formally requested oral argument on the subject of the proposed security and first implied that the panel had begun to exceed its authority. *Id.*[7] The panel responded with another unexplained, summary order directing Water Street to provide BICC with the financial records and denying the request for oral arguments. Letter of Robert F. Hall, dated Dec. 13, 1999, appended to Def. Notice as Ex. H.

As provided in the its "five points letter," the panel convened on December 14, 1999 to consider plaintiff's request for the security. Def. Notice Ex. I. The panel's ruling, ordering Water Street to provide a security in the amount of $1.7 million by January 5, 2000 ("the December 15, 1999 Order"), was faxed to the parties on December 16, 1999. *Id.*[8] Soon after, Water Street's counsel made an *ex parte* phone call to its appointed arbitrator, Ruanne, to ask if the panel's decision was unanimous. Letter of Kevin Ruanne, dated Dec. 16, 1999, appended to Def. Notice as Ex. J. In a letter to the other members of the panel dated that same day, Ruanne stated that he had been outvoted and that in his opinion, there was no basis for a security in the first instance and no basis for the extremely high amount awarded by the panel in the second instance. *Id.* Further, Ruanne accused the panel's umpire, Hall, of misleading him into believing that he was required to sign the panel's order. *Id.*

Irrespective of the growing dissension on the panel, Hall and Fowler continued to act, in accordance with the arbitration clause provision for majority rule. On December 20, 1999, Hall sent a fax to both sides requesting confirmation that Water Street had provided BICC with its financial information. Letter of Robert F. Hall, dated Dec. 20, 1999, appended to Def. No-

tice as Ex. K. BICC's counsel soon after sent a fax to the panel requesting that the panel forward the documents to BICC. Letter of Brian E. O'Donnell, dated Dec. 20, 1999, appended to Def. Notice as Ex. K. Water Street, in turn, took the position that since the panel had already made its decision on the issue of a security, its direction regarding the financial statements had been rendered moot. Letter of Peter H. Bickford, dated Dec. 21, 1999, appended to Def. Notice as Ex. L. The panel again conferred and the majority reaffirmed its earlier position. However, instead of confirming its order that Water Street provide the documents, Hall himself provided BICC with Water Street's financial statements. Letter of Robert F. Hall, dated Dec. 22, 1999, appended to Def. Notice as Ex. M.

Water Street reacted with "outrage." Letter of Peter H. Bickford, dated Dec. 23, 1999, appended to Def. Notice as Ex. N. Among other things, Water Street accused the panel of "grossly prejudicial and improper conduct," and "demand[ed] that Messrs. Hall and Fowler immediately withdraw from the Panel in this arbitration." *Id.* Specifically, Water Street charged the majority with violating two cannons of their governing organization's "Code of Conduct," (1) fairness, because of their "obvious bias," and (2) competence, for the majority's alleged "lack of appreciation for the differences between" facultative and treaty reinsurance. *Id.*

Hall reacted with a two-line fax describing Water Street's assertions as "fallacious and incorrect," and refusing to step down. Letter of Robert F. Hall dated Dec. 22, 1999, appended to Def. Notice as Ex. N. Fowler similarly responded that he "reject[ed Water Street's] characterization of the Panel's action and [would] not resign."

---

7. BICC responded with its own letter on December 9, disputing every point raised by Water Street and arguing that Water Street's letter provided further evidence of the need for a pre-hearing security. O'Donnell Supp. Ex. 7.

8. The panel also directed "that all discovery [on the merits] be stayed pending" resolution of the security issue. *See id.*

Letter of Caleb L. Fowler dated Dec. 27, 1999, appended to Def. Notice as Ex. N. More missives on the topic followed from each side.

On December 30, 1999, the panel convened again by telephone conference to decide how to proceed and issued a series of directives to both sides in a fax from Hall. Letter of Robert F. Hall dated Dec. 30, 1999, appended to Def. Notice as Ex. O. In it, the panel "requested" that Water Street "inform" it whether the company had "any objections to the form" of security suggested by BICC. *Id.* Water Street replied with a January 5, 2000 letter from counsel "offer[ing] to provide some amount of security without prejudice to its objections and defenses" but "request[ing] that the Panel reconsider the amount." Letter of Peter H. Bickford dated Jan. 5, 2000, appended to Def. Notice as Ex. P, and to O'Donnell Aff. as Ex. J. Water Street offered the amount of $215,956.00, taking the position that the figure represented the amount of security available to BICC under Water Street's former arrangement with the NYIE and was "far in excess of any amounts warranted by the record." *Id.*

The panel met again a week later and the majority rejected this proposal. Letter of Robert F. Hall, dated Jan. 12, 2000, appended to Def. Notice as Ex. Q. Defendant immediately sent the panel members a letter characterizing the panel's order as "impossible for Water Street to perform," and cited to the financial statements the company had reluctantly provided.[9] Letter of Peter H. Bickford, dated Jan. 13, 2000, appended to Def. Notice as Ex. R. The panel held a conference call on January 14, and in a letter curiously dated January 13, ordered both sides to prepare memoranda of law setting out suggested procedures to address Water Street's fail-

ure to provide the awarded security. Letter of Robert F. Hall, dated Jan. 13, 2000, appended to Def. Notice as Ex. S.

Predictably, the parties took very different approaches. BICC suggested a procedure by which it would initially accept Water Street's proffered amount of $215,956 as long as defendant made all its books and records available to BICC and agreed not to transfer any assets beyond the normal course of business or declare any dividends during the pendency of the arbitration. BICC also suggested a procedure by which the panel would issue a revised interim award following a telephone hearing in early February. Letter of Brian E. O'Donnell, dated Jan. 18, 2000, appended to Def. Notice as Ex. T. Water Street, in contrast, proposed two alternative revised orders for the panel. Letter of Peter H. Bickford, dated Jan. 21, 2000, appended to Def. Notice as Ex. T. The first would have rescinded the panel's original security order and accelerated discovery on the merits. *Id.* The second would have also accelerated discovery on the merits but would have: (a) forced the panel to justify the award under a specific provision of the Agreements or the procedural requirements of New York Insurance Law § 1213 and (b) reduced the security award to $215,696, an amount slightly below Water Street's original proffer. *Id.* BICC rejected both of these proposals and asked the panel to find Water Street in default if it did not comply with the terms of its suggestion. Letter of Brian E. O'Donnell, dated Jan. 25, 2000, appended to Def. Notice as Ex. U. The following day, BICC filed the instant action to confirm the interim security order.

The panel's majority agreed with BICC and adopted its proposed order with minor adjustments on February 1, 2000 ("the

---

9. Subsequently, Water Street also took the position that the panel's $1.7 million award also "equals approximately 85% of the available assets of Water Street, and about 140% of its net worth" and would "have the effect of putting Water Street out of business [and] would provide BICC with an unwarranted preference over all other policyholders of Water Street." Affidavit of Peter H. Bickford, dated Mar. 2, 2000, ¶ 37, appended to Def. Notice.

February 1, 2000 Order"), setting a hearing for February 22. Def. Notice Ex. V. This sparked another exchange of letters between Water Street's appointed arbitrator, Ruanne, and the panel's majority. Despite the initiation of the instant action, the majority voted on March 7, 2000 to find Water Street in default and "to have waived its opportunity to present evidence ... relating to the merits of BICC's claim" ("the March 8, 2000 Order"). Letter of Robert F. Hall, dated Mar. 8, 2000, forwarded to the Court appended to letter of Peter H. Bickford, dated Mar. 9, 2000. Accordingly, the panel has scheduled a May 8, 2000 hearing to decide how to proceed with its final order.

## DISCUSSION

### A. *Judicial Review of Arbitration Awards*

■ The FAA provides for enforcement of private arbitration agreements through the mechanism of review and confirmation by the federal courts. Although "a district court does not have the power to review an interlocutory ruling by an arbitration panel," *E.B. Michaels v. Mariforum Shipping, S.A.*, 624 F.2d 411, 414 (2d Cir.1980), an award of temporary equitable relief such as a security award, separable from the merits of the arbitration, is subject to federal review. *Yasuda Fire & Marine Insurance Co. of Europe Ltd. v. Continental Casualty Co.*, 37 F.3d 345, 348 (7th Cir. 1994); *Pacific Reinsurance Management Corp. v. Ohio Reinsurance Corp.*, 935 F.2d 1019, 1023 (9th Cir.1991); *Rakower v. Aker*, No. 98 Civ. 2652, 1998 WL 432092, at *3–4 (E.D.N.Y. May 27, 1998); *Home Indemnity Co. v. Affiliated Food Distributors, Inc.*, No. 96 Civ. 9707, 1997 WL 773712, at *3 (S.D.N.Y. Dec. 12, 1997) *aff'd on reh'g*, 1998 U.S. Dist. Lexis 8883 (S.D.N.Y. June 16, 1998); *Atlas Assurance Co. of America v. American Centennial*

*Insurance Co.*, No. 90 Civ. 5474, 1991 WL 4741, at *1 (S.D.N.Y. Jan. 16, 1991); *Sperry International Trade, Inc. v. Government of Israel*, 532 F.Supp. 901, 906 (S.D.N.Y.1982).[10]

■ At the same time, "[a]rbitration awards are subject to very limited review in order to avoid undermining the twin goals of arbitration, namely, settling disputes efficiently and avoiding long and expensive litigation." *Willemijn Houdstermaatschappij, BV v. Standard Microsystems Corp.*, 103 F.3d 9, 12 (2d Cir. 1997) (internal quotes omitted); *Barbier v. Shearson Lehman Hutton Inc.*, 948 F.2d 117, 120 (2d Cir.1991). Arbitration awards are not reviewed for errors made in law or fact. *See Willemijn Houdstermaatschappij*, 103 F.3d at 12. Rather, an award may only be vacated on extremely limited grounds, most of which are set forth in Section 10 of the FAA as follows:

(1) Where the award was procured by corruption, fraud, or undue means.

(2) Where there was evident partiality or corruption in the arbitrators, or either of them.

(3) Where the arbitrators were guilty of misconduct in refusing to postpone the hearing, upon sufficient cause shown, or in refusing to hear evidence pertinent and material to the controversy; or of any other misbehavior by which the rights of any party have been prejudiced.

(4) Where the arbitrators exceeded their powers, or so imperfectly executed them that a mutual, final, and definite award upon the subject matter submitted was not made....

9 U.S.C. § 10(a). In addition to these statutory grounds, an award may be vacated where an arbitrator acts in manifest

---

**10.** Despite this Court's very clear direction to counsel to "address specifically the Court's jurisdiction to hear each and every issue that you seek to present," Letter of the Court dated Feb. 10, 2000, neither counsel provided the Court with the product of any research on the topic, or even mentioned jurisdiction as a part of its briefing.

disregard of the law. *See Willemijn Houdstermaatschappij*, 103 F.3d at 12.

▮ The party seeking to vacate the award bears the burden of proof.[11] See *Willemijn Houdstermaatschappij*, 103 F.3d at 12. To defeat a confirmation motion, that party must make a strong showing that such action is warranted. *See id.* So long as there exists "a barely colorable justification" for the arbitration award, it should be enforced. *Landy Michaels Realty Corp. v. Local 32B–32J, Service Employees International Union*, 954 F.2d 794, 797 (2d Cir.1992) (internal quotes omitted). Thus, in this case, the burden is on Water Street to establish good cause for the Court to refuse to confirm the arbitration panel's security award and, instead, to grant its motion to vacate.

### B. *Defendant's Challenge to the Panel's Award*

Defendant proffers essentially four grounds in support of its motion to vacate, two statutory, one based in federal common law, and one based on its defenses to plaintiff's underlying claim. First, defendant argues that the panel's order of a pre-hearing security is in manifest disregard of relevant New York state law. Second, defendant contends that the panel was guilty of misconduct in three ways. Third, defendants asserts that the panel's order must be set aside on the ground of evident partiality of panel members. Finally, defendant argues that its defenses to plaintiff's underlying claim, the statute of limitations and estoppel, provide an independent ground to vacate. None of these grounds is availing.

▮ We note, though, that the panel's repeated decision to refuse to give any rationale for its acts has enhanced the task presented by the pending motions. Where "an arbitrator has not set forth the specific rationale supporting the decision, the Court may confirm an award if 'a ground for the arbitrator[s'] decision can be inferred from the case.'" *Lew Lieberman & Co. v. Randle*, 85 F.Supp.2d 123 (E.D.N.Y. 2000). Here, the record is so full of contradictory information that such an inference is not readily made.[12]

### 1. *Manifest Disregard of the Law*

▮ An arbitration award may be vacated if it is in "manifest disregard of the law." *Halligan v. Piper Jaffray, Inc.*, 148 F.3d 197, 202 (2d Cir.1998) (citing, *inter alia, Carte Blanche (Singapore) Pte., Ltd. v. Carte Blanche International, Ltd.*, 888 F.2d 260, 265 (2d Cir.1989)). The Second Circuit has noted, though, that the reach of the doctrine is "severely limited." *Id.* (citing *Government of India v. Cargill, Inc.*, 867 F.2d 130, 133 (2d Cir.1989)). Indeed, the Court of Appeals has "cautioned that manifest disregard 'clearly means more than error or misunderstanding with respect to the law'" and that "to modify or vacate an award on this ground, a court must find both that (1) the arbitrators knew of a governing legal principle yet refused to apply it or ignored it altogether, and (2) the law ignored by the arbitrators was well defined, explicit, and clearly applicable to the case." *Id.*

Defendant argues that the panel majority's manifest disregard of the law "was twofold." Defendant's Memorandum of

---

**11.** In this case, both parties concede that the arbitration clause in the Agreements does control, and they have, in fact, consented to participate in and be bound by the arbitration process. *See* Stipulation dated Oct. 18, 1999, appended to O'Donnell Supp. as Ex. 1.

**12.** However, had the "arbitrators explain[ed] their conclusions…in terms that offer[ed] even a barely colorable justification for the outcome reached, confirmation of the award

[definitely would not have been] prevented by litigants who merely argue, however persuasively, for a different result." *Sunoco Overseas Inc. v. Texaco International Trader, Inc.*, 69 F.Supp.2d 502, 506 (S.D.N.Y.1999) (quoting *Andros Compania Maritima, S.A. v. Marc Rich & Co., A.G.*, 579 F.2d 691, 704 (2d Cir.1978)). A greater effort on the part of the panel's majority to explain their actions would have made this decision, and any subsequent decision, easier to confirm.

Law in Opposition to Plaintiff's Motion for Confirmation of an Arbitration Award and in Support of Defendant's Cross–Motion to Vacate the Order ("Def.Mem.") at 12. "First," defendant argues, "the provision of the New York Insurance Law providing for pre-answer security [§ 1213] does not apply under the facts present here." *Id.* "Second, in applying the New York Law, the panel completely ignored the fundamental New York due process requirement of a hearing before any security can be ordered." *Id.*

However, by focusing on the technical requirements of this one statute, defendant's argument overlooks the essence of arbitration. "The purpose of arbitration is to provide a speedy and inexpensive determination, without the extended delays inherent in a court proceeding." *Prozina Shipping Co. Ltd. v. Elizabeth–Newark, Shipping, Inc.,* No. 98 Civ. 5834, 1999 WL 705545, *4 (S.D.N.Y. Sept. 10, 1999) (quoting *C.T. Shipping, Ltd. v. DMI (U.S.A.) Ltd.,* 774 F.Supp. 146, 149 (S.D.N.Y.1991)). As a result, arbitrators may grant equitable relief that a district court cannot, *Konkar Maritime Enterprises, S.A. v. Compagnie Belge D'Affretement,* 668 F.Supp. 267, 271 (S.D.N.Y.1987), and they are not required to "follow all niceties observed by federal courts." *Bell Aerospace Co. Div. of Textron v. Local 516,* 500 F.2d 921, 923 (2d Cir.1974). The controlling arbitration agreement provided as much. *See* Def. Notice Ex. B, Art. XVI, ¶ A (stating that the arbitrators "are relieved of all judicial formalities").

Courts in this Circuit have firmly established the principle that arbitrators operating pursuant to such provisions have the authority to order interim relief in order to prevent their final award from becoming meaningless. *See Rakower,* 1998 WL 432092, at *3–4 (holding that an arbitrator's award of temporary equitable relief can be confirmed); *Atlas Assurance,* 1991 WL 4741, at *2 (finding arbitrators' interim order placing disputed

amount into interest-bearing escrow account is reasonable); *Konkar Maritime,* 668 F.Supp. at 271 (confirming order to establish a joint escrow account for distribution under the final award); *Compania Chilena De Navegacion Interoceanica, S.A. v. Norton, Lilly & Co.,* 652 F.Supp. 1512, 1516–1517 (S.D.N.Y.1987) (confirming an order requiring defendant to post bond); *Sperry International Trade,* 532 F.Supp. at 908 (finding that arbitrators did not exceed their authority in ordering joint escrow account). *See also Yasuda Fire & Marine,* 37 F.3d at 348; *Pacific Reinsurance Management,* 935 F.2d at 1023. As such, the panel's failure to follow the specific provisions of N.Y. Insurance Law § 1213 cannot be characterized as "manifest disregard." *See Tempo Shain Corp. v. Bertek, Inc.,* 120 F.3d 16, 20 (2d Cir. 1997) ("Federal courts do not superintend arbitration proceedings. Our review is restricted to determining whether the procedure was fundamentally fair.").

Additionally, having read the submissions that both parties provided to the panel on the issue of the security (both the substantive briefs and the subsequent letters), we find that a "colorable justification" for the arbitration award exists. *Landy Michaels Realty Corp.,* 954 F.2d at 797. The evidence provided of Water Street's history of financial and geographical maneuvers clearly raises the specter that any final award could be rendered meaningless. *See, e.g., Rakower,* 1998 WL 432092, at *3–4. In addition, despite the fact that N.Y. Insurance Law § 1213 may not, by itself, apply to this case, it does provide a precedent in law for the arbitrators to find that the amount in controversy is a proper measure of a permissible amount at which to set the security.

### 2. *Misconduct by the Arbitrators*

Defendant contends that the panel was guilty of misconduct under 9 U.S.C. § 10(a)(3) on three counts: (a) in the panel's refusal "to hold a hearing on ... the

threshold issue of whether Water Street should be required to post $1.7 million in security as a pre-condition to proceeding with the arbitration;" (b) in the panel's refusal to hold a hearing on the merits of Water Street's claims and defenses, Def. Mem. at 6–9; and (c) in the act of the panel's umpire, Hall, sending Water Street's confidential financial documents to its opponent, BICC. *Id.* at 9–10 We will deal with each accusations in turn.

■ As an initial matter, the concept of "fundamental fairness" has been described as the "touchstone" for a finding of arbitral misconduct under the FAA. *Compania Chilena*, 652 F.Supp. at 1515; *Reichman v. Creative Real Estate Consultants, Inc.*, 476 F.Supp. 1276, 1284–85 (S.D.N.Y.1979). An arbitrator's decision may be vacated if there has been a denial of fundamental fairness of the arbitration proceeding. *See Tempo Shain*, 120 F.3d at 20; *Ashraf v. Republic New York Securities Corp.*, 14 F.Supp.2d 461, 464 (S.D.N.Y.1998) ("Where fundamental fairness is violated, the panel's determination becomes open to judicial review."); *Home Indemnity*, 1997 WL 773712, at *4–5 (finding that "an arbitrator's authority to order an escrow or security bond [cannot] override the requirement of fundamental fairness"). We therefore analyze Water Street's asserted grounds to determine if any of them deprived it of fundamental fairness.

a. *An Oral Hearing on BICC's Proposed Security*

■ It is undisputed that arbitrators must "give each of the parties to the dispute an adequate opportunity to present its evidence and argument." *Tempo Shain*, 120 F.3d at 19 (citing *Hoteles Condado Beach v. Union De Tronquistas Local 901*, 763 F.2d 34, 39 (1st Cir.1985)). If an arbitrator refuses to hear material and pertinent evidence, prejudicing one of the parties, the award may be set aside. *See Areca, Inc. v. Oppenheimer & Co.*, 960 F.Supp. 52, 54 (S.D.N.Y.1997).

■ However, arbitrators are not required to hear all the evidence proffered by a party. *See Tempo Shain*, 120 F.3d at 20. Rather, they must grant the parties a fundamentally fair hearing, allowing each party an "adequate opportunity to present its evidence and argument." *Id.* (quoting *Hoteles Condado Beach*, 763 F.2d at 39). Arbitrators are afforded broad discretion in determining whether "additional evidence is necessary or would simply prolong the proceedings." *Tempo Shain*, 120 F.3d at 19 (internal quotes omitted).

■ "Oral argument is not a necessary component of due process in all circumstances." *Doctor's Assoc., Inc. v. Distajo*, 66 F.3d 438, 448 (2d Cir.1995). "While hearings are advisable in most arbitration proceedings, arbitrators are not compelled to conduct oral hearings in every case." *Griffin Industries, Inc. v. Petrojam, Ltd.*, 58 F.Supp.2d 212, 219–220 (S.D.N.Y.1999) (citing *InterCarbon Bermuda Ltd. v. Caltex Trading and Transport Corp.*, 146 F.R.D. 64 (S.D.N.Y.1993)). "The lack of oral hearings does not amount to the 'denial of fundamental fairness' required to warrant vacating the award." *Id.* at 220 (quoting *Transit Casualty Co. v. Trenwick Reinsurance Co.*, 659 F.Supp. 1346, 1354 (S.D.N.Y.1987), *aff'd*, 841 F.2d 1117 (2d Cir.1988)). "As long as an arbitrator's choice to render a decision based solely on documentary evidence is reasonable, and does not render the proceeding 'fundamentally unfair,' the arbitrator is acting within the liberal sphere of permissible discretion." *Id.*

■ In this case, it can hardly be said that Water Street was denied its opportunity to present its position on the security issue, given its many long and forceful submissions. Although the panel's decision to abandon its earlier openness to oral argument, *see* Tr. 31–33, may give rise to an appearance of unfairness, Water Street has simply not shown that it was specifically or actually prejudiced by the panel's decision to decide the security issue on submission.

### b. The Panel's Denial of a Hearing on the Merits

Water Street also argues that the panel majority committed misconduct in refusing its "repeated, justified, and good faith requests for a hearing on the merits of its claims and defenses." Def. Mem. at 9. However, this argument is somewhat misleading. Water Street never directly raised its substantive defenses in: (a) its initial letter to the arbitrators describing the controversy, O'Donnell Aff. Ex. D; (b) the organizational meeting of the arbitration panel with both counsel, *id.* Ex. F; or (c) its brief in opposition to the security award, *id.* Ex. H. Water Street's counsel only ever obliquely referred to alleged obstacles to BICC's ability to prove its case. *See* O'Donnell Aff. Ex. D (admitting that "there are probably some sums due to" BICC by Water Street but that BICC had not provided sufficient documentation). *See also* Letters of Peter H. Bickford, appended to Def. Notice as Exs. E, G (referring only to BICC's difficulty in proving its case "on the merits").

At the same time, the panel's decision to order a security as substantial as $1.7 million dollar without any evidence that it even considered Water Street's facially credible statute of limitations defense does raise concern with regard to the question of whether Water Street has been denied "fundamental fairness." This is particularly true given the panel's order precluding the conduct of discovery aside from the panel's independent disclosure of Water Street's confidential financial information. *See, e.g., Home Indemnity Co.,* 1997 WL 773712, at *4–5 (vacating a panel's award where it had precluded discovery, refused to examine whether there was a meritorious claim, and denied the losing party a "fundamentally fair hearing"). A federal court would not issue such sweeping preliminary relief without engaging in some analysis of the merits of the case. *See Reno v. American–Arab Anti–Discrimination Comm.,* 525 U.S. 471, 494, 119 S.Ct. 936, 142 L.Ed.2d 940 (1999) (Stevens, J.

concurring) (noting that an "essential element" of a federal court's issuance of a preliminary injunction is a finding of likelihood of success on the merits); *Federal Express Corp. v. Federal Espresso, Inc.,* 201 F.3d 168, 173 (2d Cir.2000) (reciting the requirement that a party seeking preliminary relief in federal court must show a likelihood of success on the merits); *Landau v. Vallen,* 895 F.2d 888, 893 (2d Cir.1990) ("Every court considering an application for prejudgment attachment ... examines the likelihood of success on the merits.").

We confirm the panel majority's threshold decision concerning the security award nevertheless because if we were to rule, as Water Street urges, that it was denied due process for the sole reason that the panel would not hear its substantive defenses in advance of its decision on the security, then any such interim security provision would be subject to reversal on its face if it were issued before a full hearing on all defenses. It must be remembered that the arbitration clause entered into by Water Street did provide that arbitrators would be "relieved of all judicial formalities." Def. Notice Ex. B, Art. XVI, ¶ B. "[U]ndue judicial intervention would inevitably judicialize the arbitration process, thus defeating the objective of providing an alternative to judicial dispute resolution." *Tempo Shain,* 120 F.3d at 19.

However, the analysis would not necessarily be the same if plaintiff were seeking confirmation of a final award in this case based on the present record. Although we find the panel's security order to be "colorable," in and of itself, it is an insufficient basis for the resolution of the underlying controversy. Our concern about the adequacy of the record is based on the following: (1) Water Street has offered at least a facially valid statute of limitations defense given the gap between its 1989 disclaimer of liability and BICC's 1997 demand for arbitration; (2) the extremely large amount of the security ordered by the panel may make it impossible for Water

Street to obtain a resolution on the merits; (3) the panel's early foreclosure of discovery on the merits;[13] (4) the panel's continued issuance of merits-based orders,[14] even though the members are aware that the parties have both voluntarily subjected the initial security order to federal review and that Water Street is exercising its right under the FAA to do so. In sum, it is these facts which would present issues of fundamental fairness if a final award were issued without the development of an additional record on the merits. *See Areca,* 960 F.Supp. at 54 (finding that if an arbitrator refuses to hear material and pertinent evidence, prejudicing one of the parties, the award may be set aside); *Konkar Maritime,* 668 F.Supp. at 271 ("All parties in an arbitration proceeding are entitled to ... an opportunity to be heard [and] must be allowed to present evidence without unreasonable restriction.") (quoting *Totem Marine Tug & Barge, Inc. v. North American Towing, Inc.,* 607 F.2d 649, 651 (5th Cir.1979)).

### c. The Disclosure of Water Street's Records

■ Third, Water Street contends that misconduct may be found in the panel majority's decision to disclose its confidential financial documents to its competitor in the reinsurance industry. "Misconduct typically arises where there is proof of either bad faith or gross error on the part of the arbitrator." *Shamah v. Schweiger,* 21 F.Supp.2d 208, 214 (E.D.N.Y.1998) (internal citation omitted). Here, defendant was justified in its belief that its current financial data was more relevant to the then ostensibly resolved security issue than it was to the underlying decade-old dispute and that, consequently, BICC's need for the information was limited.

Were this matter before us, we would have been reluctant to have disclosed this information without a greater showing of necessity, without notice to Water Street of our intention, and certainly without a specific restriction limiting the use of the information to litigation purposes. The decision to disclose after the panel had rendered its security decision raises additional questions. However, given the limited role of *in camera* submissions in formal court proceedings, we cannot conclude that this act by the arbitrators rises to the level of bad faith or gross error that would warrant vacation of the decision. *See Postlewaite v. McGraw–Hill, Inc.,* No. 98 Civ. 0611, 1998 WL 751687, at *4 (S.D.N.Y. Oct. 28, 1998) (noting that "arbitrators have an 'affirmative duty ... to ensure that relevant documentary evidence in the hands of one party is fully and timely made available to the other side' "). Further, Water Street's submission does not satisfy its burden of demonstrating us how it was specifically harmed by the disclosure. *See Konkar Maritime,* 668 F.Supp. at 273–74 (refusing to find misconduct where defendant "has failed to show any prejudice stemming from" the arbitrator's act).

### 3. Evident Partiality

■ Water Street next argues that the panel is guilty of evident partiality under section 10(a)(2) of the FAA. 9 U.S.C. § 10(a)(2). Water Street correctly cites the proposition that a court may overturn an arbitrator's decision "[w]here a reasonable person would have to conclude that an arbitrator was partial to one party to the arbitration." Def. Mem. at 10 (citing *inter alia, Morelite Construction Corp. v. New York District Council Carpenters Benefit Funds,* 748 F.2d 79, 84 (2d Cir.1984)).

"While evident partiality or corruption by the arbitrator is a valid ground for vacating an arbitration award, there is a high standard in order to prevail on such a claim." *Sunoco Overseas,* 69 F.Supp.2d at 504–05 (citing 9 U.S.C. § 10(a)(2)). "Courts are reluctant to set aside an award based on a claim of evident partiality, and will do so only if bias of the arbi-

---

**13.** Def. Notice Ex. I.

**14.** *See* March 8, 2000 Order.

trator is direct and definite; mere speculation is not enough." *Id.* (quoting *Sofia Shipping Co., Ltd. v. Amoco Transport Co.,* 628 F.Supp. 116, 119 (S.D.N.Y.1986)).

Defendant argues that the arbitrator's partiality is demonstrated by:

> the entire course of conduct of the panel majority, including refusal to hold any hearings, compelling Water Street to submit confidential financial records, releasing those records to opposing counsel at a time when they not [sic] required for any legitimate purpose, and imposing a crippling punitive financial burden on Water Street.

Pet. Mem. at 10–11. However, we have already examined these rulings and have not found them to be a basis to set aside the order.

■ Moreover, adverse rulings are not enough to establish evident partiality. *See Konkar Maritime,* 668 F.Supp. at 275 (finding that "speculation [of evident partiality based on adverse rulings] is clearly insufficient to warrant vacatur of the [arbitration panel's] award") (citing *Bell Aerospace,* 500 F.2d at 923). *See also United States v. International Brotherhood of Teamsters,* 170 F.3d 136, 147 (2d Cir.1999) (requiring that a finding of evident partiality be based on more than the "appearance" standard applicable to judges); *Sunoco Overseas,* 69 F.Supp.2d at 505 (finding no evident partiality where there was no direct evidence of improper *ex parte* communication and any connection between the parties and the arbitrators was too "attenuated"). Since defendant can offer nothing but adverse rulings to support its claim of partiality, its allegations are nothing more than "mere speculation," insufficient to constitute grounds for overturning the arbitrator's award.

### 4. *Underlying Defenses*

■ Finally, Water Street contends that, pursuant to section 3 of the FAA, this Court has the authority to dismiss BICC's claims against it based on its statute of limitations and estoppel defenses. Def. Mem. at 16–19. In other words, after conceding the arbitrability of the dispute, Water Street now seeks to have this Court resolve its statute of limitations and estoppel defenses. *See* Tr. 19; Stipulation dated Oct. 18, 1999, appended to O'Donnell Supp. as Ex. 1. "Once a court determines that the parties agreed to arbitrate a dispute, then that dispute must be submitted to the arbitrator." *Thomas James Assoc. v. Jameson,* 102 F.3d 60, 68 (2d Cir.1996) (quoting *Local Union No. 370 of the International Union of Operating Engineers v. Morrison–Knudsen Co.,* 786 F.2d 1356, 1358 (9th Cir.1986)).

■ BICC's reliance on 9 U.S.C. § 3 is misplaced. Section 3 provides only that a federal court has the power to stay a case before it until after an arbitration "has been had" if the case is "referable to arbitration." [15] This section does not give this Court the power to divest the arbitration panel of its authority and decide the case on the merits. *See Moses H. Cone Memorial Hospital v. Mercury Construction Corp.,* 460 U.S. 1, 24–25, 103 S.Ct. 927, 74 L.Ed.2d 765 (1983) (stating that the FAA "establishes that, as matter of federal law, any doubts concerning the scope of arbitrable issues should be resolved in favor of arbitration, whether the problem at hand is the construction of the contract language itself or an allegation of waiver, delay, or a like defense to arbitration").

■ Moreover, it is a clearly established principle of arbitration law that "it

---

**15.** In full, 9 U.S.C. § 3 provides: "If any suit or proceeding be brought in any of the courts of the United States upon any issue referable to arbitration under an agreement in writing for such arbitration, the court in which such suit is pending, upon being satisfied that the issue involved in such suit or proceeding is referable to arbitration under such an agreement, shall on application of one of the parties stay the trial of the action until such arbitration has been had in accordance with the terms of the agreement, providing the applicant for the stay is not in default in proceeding with such arbitration."

is up to the arbitrators, not the court, to decide the validity of time-bar defenses." *Shearson Lehman Hutton, Inc. v. Wagoner*, 944 F.2d 114, 121 (2d Cir.1991). *See also Consolidated Rail Corp. v. Metropolitan Transportation Authority*, No. 95 Civ. 2142, 1996 WL 137587, at *13 (S.D.N.Y. Mar. 22, 1996) (same); *Domon v. Warsitz*, No. 92 Civ. 721S, 1993 WL 152079 (W.D.N.Y. Apr. 36, 1993) (confirming an arbitrator's award where defendant did "not explain why the arbitrators' decision not to apply the [statute of limitations] bar would have been a manifest disregard of the law or why such an exercise of discretion would have been beyond the powers of the arbitrators").[16] The same is true of the defense of estoppel. *Local 333, United Marine Division, ILA, AFL–CIO v. McAllister Brothers, Inc.*, 671 F.Supp. 309, 312 (S.D.N.Y.1987) (citing *Local 370*, 786 F.2d at 1358).

■ To recapitulate, "once a court has answered questions of arbitrability ... the court must refrain from deciding the validity of any asserted 'defenses rather than [referring] their resolution to an arbitrator.'" *Thyssen, Inc. v. M/V Markos N*, No. 97 Civ. 6181, 1999 WL 619634, at *8 (S.D.N.Y. Aug. 16, 1999) (quoting *Conticommodity Services, Inc. v. Philipp & Lion*, 613 F.2d 1222, 1224 (2d Cir.1980)). Here, Water Street itself conceded that the matter was subject to arbitration and cannot credibly assert to the contrary now.

## CONCLUSION

Having considered and rejected Water Street's arguments for vacatur, the Court grants BICC's motion to confirm the December 15, 1999 pre-hearing security award, and denies Water Street's cross-motion to vacate the award. Defendant Water Street is directed to provide the ordered security as directed by the panel in its December 15, 1999 Order, or its February 1, 2000 supplement. The issues raised by the motions to confirm and to vacate having been resolved, the Clerk of the Court is directed to close this case without prejudice to either party's reopening the case to move to confirm or vacate the panel's final award.

**IT IS SO ORDERED.**

---

16. To the extent that defendant argues that the panel's failure to recognize its statute of limitations defense is an additional manifest disregard of the law, it faces an extremely difficult burden. *See, e.g., McCarthy v. Smith Barney, Inc.*, 58 F.Supp.2d 288, 293 (S.D.N.Y. 1999) (rejecting a manifest disregard ground to overturn an arbitration panel's decision based on a statute of limitations claim where defendant could not set forth evidence that "the arbitrators were aware of, and purposefully ignored" the applicable law). As noted, *supra*, in section B(2)(b), Water Street simply did not raise its statute of limitations defense until after the panel had already issued its challenged security order. The statute of limitations issue only seems to have gained saliency upon its development before this Court. It would be disingenuous for Water Street to argue now that the panel was "aware of" and "purposefully ignored" a defense that was not squarely presented.